East Tennessee Coal Co. v. Daniel.

100    65
e117   424
117    428

East Tennessee Coal Co. v. Daniel.

(*Knoxville.* November 10, 1897.)

1. **Variance.** *Between pleadings and evidence.*

Under a declaration averring specific acts of negligence as grounds for recovery, the plaintiff cannot recover upon proof of other acts of negligence. (*Post*, *pp. 72–74.*)

Cases cited: 2 Metc. (Ky.), 146; 52 Ga., 410.

2. **Same.** *Same.*

And plaintiff is not precluded from insisting upon such fatal variance by his failure to object to the admission of the irrelevant evidence. (*Post*, *pp. 74, 75.*)

3. **Statute of Limitations.** *Commencement of suit.*

A right of action is not saved from the bar of the statute of limitations, where, before it was barred, the plaintiff obtained the issuance of an original summons, which was delivered to his attorney, but never placed in the hands of an officer, and, after the time of the statute had run, dismissed his suit for want of service of process, and thereafter, within twelve months, brought a new suit. The first action was not "commenced" within the meaning of the statutes permitting a party, whose suit brought in time has been dismissed upon some ground not concluding his rights, to renew his action within twelve months after such dismissal, though the statute may in the meantime have run its course. (*Post*, *pp. 75–79.*)

Code construed: §§ 4445, 4446 (S.); §§ 3448, 3449 (M. & V.); §§ 2754, 2755 (T. & S.).

Cases cited: Anderson v. Bedford, 4 Cold., 464; Sweet v. Electric Light Co., 97 Tenn., 252; Railroad v. Pillow, 9 Heis., 251; Cole v. Nashville, 5 Cold., 639.

4. **Same.** *Same. Burden of proof.*

Plaintiff in an action which is *prima facie* barred by lapse of time has the burden of showing, where he relies upon the commencement of a former action and a dismissal thereof within one year before the commencement of the second action, as

16 p—5

East Tennessee Coal Co. *v.* Daniel.

authorized by Shannon's Code, §§ 4445, 4446, that the former action was "commenced" within the meaning of the statutes. (*Post, p. 79.*)

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County. JOSEPH W. SNEED, J.

LUCKY, SANFORD & TYSON, for Coal Company.

INGERSOLL & PEYTON for Daniel.

McALISTER, J.　Daniel recovered a verdict and judgment in the Circuit Court of Knox County against the East Tennessee Coal Company for the sum of $2,000 damages for personal injuries. The company appealed and has assigned ᐧ errors. This cause was before the Court at last term on appeal of the coal company from a judgment against it in favor of defendant in error for $2,200. The judgment of the lower Court was reversed for error in the charge of the trial Judge, and for the further reason that in the opinion of this Court there was no evidence to support the verdict.

The plaintiff below, Evan Daniel, was employed as a blacksmith helper at the company's mines, and sustained serious personal injuries while riding in an empty car ascending the incline tramway used by

defendant company for the purpose of transferring its coal from its mines down to the valley below.

The original declaration alleged that defendant company used this incline in its coal mining operations; that the tram cars, though dangerous, were habitually used by the employes; that plaintiff, a blacksmith helper at defendant's shops at the top of the incline, was directed by defendant's foreman of the blacksmith shop to go down and return on a trip of said tram cars, for the purpose of getting some nails; that, on the return trip; the fastenings or couplings by which the first of the ascending cars was hitched to the wire cable operating the tramway broke loose, and caused the accident in which plaintiff was injured; that the coupling was out of order and negligently coupled, and that the accident was caused by the negligence of the defendant company in this respect. The trial Judge instructed the jury there could be no recovery on this declaration, since no evidence had been introduced tending to show that the injury had occurred in consequence of the breaking loose of the cable.

The amended declaration, after reciting the employment of plaintiff as assistant blacksmith, and stating that he had been sent by the foreman of the shop down on said loaded cars to get a package of nails, and that, while returning on the empty cars, the same became derailed, and plaintiff was injured, it is alleged, by reason of the cars, coupling, track, and latches on said incline being de-

fective and dangerously constructed, and that at the time of the accident they were seriously out of order and dangerously obstructed, all on account of the negligence and carelessness of defendant company. The defendant pleaded the general issue and relied also upon the statute of limitations of one year.

The facts disclosed in the record are that the incline tramway had two tracks, which converged near the bottom, and that its length was about five hundred and fifty feet. The cars were operated by a wire cable winding over a drum at the top of the incline, the loaded cars descending on one track, and the empty cars ascending on the other parallel track. The company had in its employ two men, named Abe Hall and Clint Roland, who were stationed at the bottom of the incline, and whose duty it was to receive and detach the loaded cars and to forward the empty cars. It appears that about thirty feet from the point where these men were stationed there were two movable switch rails called latches, and the employes, Hall and Roland, were charged with the duty of keeping these latches clear of coal or other obstruction, in order that they would work properly and switch the cars. The cause of the accident, upon the evidence presented in the record, is a matter of conjecture and speculation. The most reasonable theory, as we view the record, is that a piece of coal had fallen from one of the cars upon one of the lower latches, thereby preventing

East Tennessee Coal Co. *v.* Daniel.

the latch from closing, and causing the second car, upon which Daniel was seated, to jump the track.

The learned counsel for defendant in error has no distinct theory upon which he relies. He states, in his brief, viz.: ''Two witnesses say it was caused by coal left in the latches; two say it was caused by the coupling bouncing out of the link; another witness says it was a bad car with worn wheels; another says it might have come from coal in the latches, a pin jumping out, or the cars being out of gauge; and yet another witness says that the pressure of the rope might have thrown it off.''

''But,'' says counsel, ''whichever of these was the real cause, it resulted from the negligence of defendant in providing and maintaining in such an imperfect and dangerous condition such a means of conveyance upon which it invited and allowed its employes to ride.'' It appears that for some time previous to this accident the company had caused to be posted in a conspicuous place, both at the top and foot of this incline, the following notice, to wit: '' Riding on cars of this company strictly forbidden; riding on cars of incline also forbidden. Every one riding on cars of this company does so at his peril.'' The reason of this notice is obvious. The incline tramway was not designed for passenger accommodation, but as a means of hauling coal from the mines to the valley below. It was necessarily a very dangerous mode of transportation for passengers; and this fact was patent to all the employes

of the company. The cars, it is shown, frequently left the track, and accidents were unavoidable. It was necessary to keep in constant use an appliance to throw all the cars from the track when one car became derailed, in order to prevent the loosened car from being precipitated down the incline, imperiling life and property below.

It appears that Daniel had been working for several years near the top of the incline, and was cognizant of the danger, since it was a part of his duty to remove wrecks and repair injured cars. It is insisted, however, that the rule of the company against riding on the cars was habitually violated by officers and employes, with the knowledge of the company, and that the rule was practically abrogated. It is stated by plaintiff that when he went to the mines to work, the superintendent took him into one of these cars and carried him up to the bank level at the shop, and that he had repeatedly ridden thereafter with the superintendent in those cars. It is further stated that officers and employes rode upon these cars every day going to and returning from the mines.

It was held by this Court in *Railroad* v. *Reagan*, 12 Pickle, that it is the duty of a railroad company not only to promulgate a code of rules for the government of its employes, but to enforce their observance. . . . And that an habitual breach and disregard of the rules by the employes, with the

knowledge of the company, amounts to a practical abrogation of the rules.''

It is proper to say that evidence was introduced on behalf of the company tending to show that the company had not acquiesced in the violation of the rule, but had made vigorous efforts to enforce it, and that it was violated by the employes despite the remonstrances and protests of the company. It was, of course, a matter within the exclusive province of the jury to determine this controverted question upon the evidence.

If it be conceded that the rule was practically abrogated on account of its habitual violation by the employes, with the knowledge of the officers of the company, then the case must be tried as if no such rule had ever been adopted, and the question would still be presented whether an employe riding upon cars designed exclusively for freight transportation could recover for injuries so received.

When the cause was before this Court at last term, the judgment in favor of Daniel was reversed, upon the grounds, first, that there was no evidence to sustain the verdict, upon the theory under which it was tried and submitted to the jury by the charge, if there is upon any theory, which the Court did not decide. The case was then presented to the jury upon the theory, among other things, that plaintiff might have had some right of recovery because of the orders of the head smith of the blacksmith shop, or of the plaintiff obeying such orders.

East Tennessee Coal Co. *v.* Daniel.

The Court was of opinion that these persons were fellow-servants, under the control of a common superior, and the orders of either immaterial. The Court was also of opinion the trial Judge was in error in not charging the following instruction, submitted by counsel for defendant, viz.: "If the jury found, from the proof, that the injury was caused by the derailment of the cars by reason of a piece of coal getting in the latch or latches, and that it was the duty of the colored boy, Abe Hall, or of the other colored boy, Clint Roland, or both, to have cleaned out said coal from the latches, and that it was the failure of the said Hall or Roland thus to clean out the coal that caused the injury to plaintiff, then I charge you that you must not find in favor of plaintiff, because the negligence was that of a fellow-servant of the plaintiff, for which defendant is not responsible to plaintiff, and for which plaintiff cannot recover."

On the last trial, among other contentions made on behalf of plaintiff, it was insisted that defendant company was liable, for the reason that the force at the foot of the incline (that is to say, the two men, Hall and Roland,) was insufficient to keep the latches clean. There is no allegation in either count of the declaration that the men employed to look after and clean the latches were insufficient for that purpose.

Counsel for the defendant company requested the Court to instruct the jury that, "under the plead-

ings, the plaintiff does not seek to recover against the defendant on account of the failure of defendant to have a sufficient number of employes at the foot of the incline to keep the coal out of the latches, and if you should find that the accident was caused by the failure of defendant to employ a sufficient number of hands at the foot of the incline to keep the coal out of the latches, then, in such event, the defendant would not be liable under the pleadings in the cause, and your verdict should be for the defendant.'' The Court declined to give this instruction, and this action we hold to be error. That defendant company had an insufficient complement of men to perform the work was a distinct ground of liability, which should have been alleged in the declaration in order to warrant a recovery against the defendant upon that ground. We do not find within the four corners of the declaration, original or amended, any allegation of such ground of liability.

The general rule is that in actions for personal injuries resulting from negligence, it is sufficient for plaintiff to allege, in general terms, that the injury was occasioned by the carelessness and negligence of the defendant. An allegation of the extent of the injury and the manner in which it was inflicted, is sufficient, without specifying the grounds of liability or circumstances of negligence. *Chiles* v. *Drake*, 2 Metc. (Ky.), 146. But where definite acts of negligence are alleged in the declaration as grounds of

liability against the defendant, the proof will be con-
fined to the acts alleged.    *Georgia R. R. Co.* v.
*Oaks*, 52 Ga., 410.

The grounds of liability were specifically alleged
in the declaration filed in this cause, to wit: First,
that the injury was caused by the breaking loose of
the couplings by which the car was attached to the
wire cable.    The amended declaration alleged that
the injury was caused by defective and dangerously
constructed machinery, tracks, etc., which, at the
time of the accident, were seriously out of order
and dangerously obstructed.    Plaintiff having speci-
fied these distinct grounds of liability in his declara-
tion, will be confined in his right to recover to
proof of the acts alleged.

It is insisted, however, by learned counsel, that if
plaintiff's declaration did not convey a reasonable cer-
tainty of meaning, defendant's remedy was *in limine*,
by motion to direct a more specific statement, and
and also during the time of trial by objecting
to evidence showing this negligence.    We do not
see that defendant was called upon to ask a more
specific statement, since the declaration was entirely
perspicuous, and did convey a reasonable certainty
of meaning, and, for that very reason, defendant
could not be expected to know that it meant some-
thing wholly foreign to its averments.    Nor was
defendant precluded from asking the instruction re-
fused, for the reason that it did not object to the
evidence on this point.    The question of insufficiency

of hands was not the subject of direct proof, but was rather an inference to be deduced from the nature and character of the work to be performed, the number of men actually employed, and the extent of their duties.    It would have been difficult for the defendant to interpose such specific objection as would have eliminated this question from the proof.    Moreover, want of pleading is not 'cured by proof.

Another question is made on the statute of limitations.    The defendant company relied on the statute of' one year in bar of plaintiff's action.    The record shows that the plaintiff's injury occurred on May 3, 1892.    An alleged action was commenced on April 29, 1893, which lacked only four days of being twelve months from date of injury.    On November 7, 1893, six months after its commencement, the action was dismissed, and within twelve months after such dismissal plaintiff commenced the present action.

The only record evidence on the commencement and final disposition of the original action is, viz.:

First, an entry on the rule docket, viz.: "Summons issued April 29, 1893."    Again, a minute entry, made on November 7, 1893, recites, viz.: "Plaintiff comes and dismisses his suit for want of due service of process," etc.    There is no proof that the original summons was ever delivered to the Sheriff, or that it was ever returned by that officer.    It is said a presumption arises that the Clerk did his duty and

delivered the original summons to the Sheriff. But this presumption is counterbalanced and neutralized by the like presumption that the Sheriff performed his duty, and that if the original summons had been delivered to him it would have been executed or re turned. On this subject the record is silent. Mr. Ford, who was clerk of the Circuit Court at the time the original summons was issued, states that he does not know to whom he issued the process— whether to the Sheriff or counsel—that sometimes counsel take out the process with them and sometimes they leave it for the Sheriff. The ex-clerk further states that the summons, to whomsoever issued, was never returned; that the place where the return would have been copied in the appearance docket is blank. The only knowledge the witness has of the subject is derived from the entry on the appearance docket, which recites, viz.: "Summons issued April 29, 1893." Upon these facts counsel for the company requested the Court to charge the jury as follows, to wit: "If the proof as to the former suit alleged to have been brought by plaintiff against defendant for this same cause of action leaves it in doubt whether the original summons was issued by the Clerk to the Sheriff or to the plaintiff's counsel, and fails to show that it was ever given to an officer for service, and if you should further find the fact to be that such former suit was dismissed by the plaintiff because of want of due service of process, and was thereupon dismissed by the Court and judg-

East Tennessee Coal Co. *v.* Daniel.

ment awarded against plaintiff for costs, I charge you under such a state of facts the law to be that such former suit and its dismissal would not save the running of the statute of limitations, and that the present suit, brought more than a year after plaintiff's injury was received, would, in such case, be barred, and your verdict should be for defendant." The Court refused this request and charged the jury, viz.: "On the subject of the statute of limitations I instruct you to find that issue in favor of the plaintiff. While this suit was begun more than a year from the date of the injury, yet the institution of the first suit and dismissal for want of service of process, extended the time for one year from date of dismissal, and it being admitted that this suit was brought within a year from the dismissal, I instruct you the suit is not barred."

Counsel for plaintiff cites, in support of the charge given, *Railroad* v. *Pillow*, 9 Heis., 251, 252; *Cole* v. *Nashville*, 5 Cold., 639. Section 4446, Shannon's Code, provides, viz.: "If the action is commenced within the time limited, but the judgment or decree is rendered against the plaintiff upon any ground not concluding his right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested or reversed on appeal, the plaintiff or his representatives and privies, as the case may be, may from time to time commence a new action in one year after the reversal." Section 4445, Shannon's Code, provides, viz.: "The suing

out of a summons is the commencement of an action within the meaning of this chapter, whether it be executed or not, if the action is duly prosecuted and continued by the issuance of alias process from time to time or recommenced within one year from the failure to execute.''

The insistence made on behalf of defendant company is that the mere handing of a summons by the Clerk to plaintiff's counsel, without it ever going into the hands of an officer, and without any other step being taken to execute it or to proceed with the suit in any regular form, is not such commencement of an action, within the meaning of the statute making an exception to the bar of the statute of limitations.

Says Mr. Wood, in his work on Limitations, Vol. II., Sec. 296, viz.: ''Except where the statute expressly makes a saving of the rights of a plaintiff on the failure of the original suit for any cause, whether by reason of the plaintiff becoming nonsuit, the abatement or dismissal of the action, or the reversal of the judgment, a new action cannot be brought for the same cause against which the statute will not be a bar.'' Again, he says that an action is commenced when the writ is filled out and completed, with an intention of having it served. ''In any event,'' says the author, ''the issuance of a process and giving it to the officer for service, or depositing it in a place designated or provided by an officer for that purpose, clearly amounts to a com-

East Tennessee Coal Co. *v.* Daniel.

mencement of an action." Again, he says the general rule is, except where otherwise provided by statute, that the statute is suspended from the time of the suing out of the writ and its *bona fide* delivery to a proper officer for service." Section 289 and authorities cited.

In *Anderson* v. *Bedford*, 4 Cold., 464, this Court said, viz.: "In no case of which we are advised, where the failure of the action is due to the default, wrong, or laches of the plaintiff, has it been held sufficient to authorize the bringing of another suit, under the exception of the statute, within one year after the termination of the first." See, also, *Sweet* v. *Electric Light Co.*, 13 Pickle, 252. The burden of proof in this case rested upon the plaintiff to show that his action, which was *prima facie* barred, came within the saving and exception of the statute. The trial Judge was therefore in error in refusing the request submitted by counsel for the company, for, if the facts stated in that hypothesis were true, plaintiff's action was barred. It follows that the instruction given by His Honor on the subject of the statute of limitations was erroneous.

For these reasons the judgment is reversed, and the cause is remanded for a new trial.