LA FOLLETTE COAL, IRON & RAILWAY COMPANY *v.* W. M.
MINTON.

(*Knoxville.*   September Term, 1906.)

1. **VERDICTS.** For personal injuries sustained by the evidence
of defendant's negligence.

Evidence stated, examined, and held sufficient to sustain a ver-
dict in favor of plaintiff for personal injuries caused by defend-
ant's negligence in failing to protect employees from falling ore
in the mine shaft.   (*Post, pp.* 417-423.)

Case cited and approved:   Iron Co. v. Hamilton, 107 Tenn., 705.

2. **CONTRIBUTORY NEGLIGENCE.** Question to be submitted
to the jury.

The question of plaintiff's contributory negligence as affecting
his right of recovery for personal injuries is proper to be sub-
mitted to the determination of the jury under the evidence.
(*Post, p.* 423.)

3. **EMPLOYER AND EMPLOYEE.** Question of assumption of
risk by employee is properly submitted to the jury.

The question of the plaintiff's assumption of the risk incident
to his employment from his familiarity with the premises and
his experience in the business is a matter for the jury and is
proper to be submitted to its determination under the evidence.
(*Post, p.* 423.)

4. **STATUTES OF LIMITATIONS.** New action within one year
after dismissal of first suit for failure to file declaration,  where
the first suit was brought in time, when.

The dismissal of the plaintiff's suit on account of his failure to
file a declaration does not conclude his right of action, and
hence a second suit, brought within one year after such dis-
missal of the first suit, which was brought in proper time,
is not barred by the statutes of limitations.  (*Post, pp.* 423-428.)

Coal, Iron & Railway Co. v. Minton.

Code referred to and construed:  Sec. 4446 (S.); sec. 3449 (M. & V.); sec. 2755 (T. & S. and 1858).

Cases cited and approved:  Cole v. Nashville, 5 Cold., 639; Railroad v. Pillow, 9 Heisk., 248; Iron Co. v. Broyles, 95 Tenn., 612; Hooper v. Railroad, 106 Tenn., 31; Hooper, Admr., v. Railroad, 107 Tenn., 716; Lindsay v. Allen, 112 Tenn., 653; Homer v. Brown, 16 How. (U. S.), 354; Insurance Co. v. Broughton, 109 U. S., 121; Gardner v. Railroad, 150 U. S., 349.

Cases cited and distinguished:  Anderson v. Bedford, 4 Cold., 464; Sweet v. Light Co., 97 Tenn., 252; Coal Co. v. Daniel, 100 Tenn., 65.

5.  **WITNESSES.**  Evidence is admissible to sustain good character of plaintiff where an effort is made, upon cross-examination, to discredit him as a witness.

Evidence is admissible to prove the good character of the plaintiff, where he testified, and upon his cross-examination an effort was made to discredit him as a witness.  (*Post, pp.* 428, 429.)

Cases cited and approved:  Richmond v. Richmond, 10 Yerg., 345; Warfield v. Railroad, 104 Tenn., 74.

FROM CAMPBELL.

Appeal in error from the Circuit Court of Campbell county.—G. Mc. HENDERSON, Judge.

H. B. LINDSAY and W. A. OWENS, for Coal, Iron & Railway Company.

J. A. FOWLER and AGEE & PETERS, for Minton.

Coal, Iron & Railway Co. v. Minton.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The plaintiff below recovered a verdict and judgment against the defendant company for the sum of $3,000, as damages for personal injuries. The defendant company appealed, and has assigned errors.

It is alleged in the declaration that the defendant company was operating iron ore mines near the city of La Follette, in Campbell county, Tennessee, in which what was known as "shaft No. 2," from which shaft the ore was hoisted by means of steam engines, was defective and not up to the standard of engineering skill and mining; and while the plaintiff was in the shaft a large piece of iron ore fell about fifty feet from the surface and struck plaintiff on the head.

The facts are more specifically stated in the fourth count of the declaration as follows:

"Plaintiff was employed by defendant and directed to repair a pump or other machinery situated near the bottom of said shaft, and was also directed by a superior servant to procure proper implements with which to make said repairs, and in order to procure said implements it became necessary or proper for him to enter upon a scaffold in said shaft, which was placed there for the use of employees. In passing along the first level of said mine, from one side of said shaft to the other, and as plaintiff was stepping into the shaft upon the scaffold, a heavy piece of ore fell from the skip car, at or

117 Tenn—27

near the top of said shaft, down the same, and struck plaintiff on the head, fracturing his skull, and rendering him senseless for two weeks, resulting in paralysis and permanent disability.

The place where plaintiff was put to work was unsafe and dangerous. Defendant had given plaintiff no warning, advice, and instructions with reference to the construction of said shaft and machinery."

Plea of not guilty and statute of limitations of one year were interposed by the defendant.

The first assignment we shall consider is that there is no evidence, when taken as a whole, to sustain the verdict, and that the undisputed evidence showed that plaintiff was injured as the direct result of the negligence of his fellow servants, who dropped a piece of ore which struck plaintiff.

Charles Willis was the general mine foreman, and employed to sink shaft No. 2 in defendant's mine. Willis put Minton to work fixing up the shaft "in general." Minton procured certain tools and started into the shaft to begin preparations at the bottom. Searles was general superintendent of the company, and admits he had a talk with Minton about taking the contract, but says they had not come to a perfect understanding about the matter. Willis says the contract between Searles, general superintendent, and Minton, had been practically closed, but was not signed.

Minton was working in the line of his employment when he was injured. He discovered, on going to bot-

tom of shaft, that pumps must be repaired and must be lowered, and that in doing so it would be necessary to disconnect and again connect the pipes.   He found that it would also be necessary to sink the shaft a little lower in order to put in some timbers.

Minton states that "that morning, when he entered the shaft at the first level, he saw Davis, an old acquaintance, and passed over the shaft and had a conversation with Davis, and while there saw an iron bar, and that when he started into the shaft, at the time he was injured, it was his purpose to go to the pump, detach the pipes, and lower it for the purpose of making the proper connections and putting on or off a flange, and it was necessary for him to have an instrument similar to this bar, and for that reason, he started over to procure it from Davis, and was injured while doing so."

Davis corroborates Minton, wherein Davis testifies that he did have a bar, which he used in punching the ore into the skip.

Plaintiff insists he was injured while in the skip section of the shaft, passing across the plank, as claimed by him, and was not sitting on the plank talking to Davis, as contended by plaintiff in error.

Minton himself testifies positively that he had descended into the other section of the shaft to the first level and had opened the door in the partition between the two sections of the shaft, and had started into the skip section, and while he yet had hold of the door with

his hand, and just as his head got inside the shaft, this ore fell and knocked him unconscious.

It is true Davis testified for the defendant below that Minton was sitting in the shaft on the plankway, talking to him at the time the rock fell and struck him. Davis is corroborated in this statement by Wm. Henry and Geo. W. Taylor. It is insisted on behalf of plaintiff that these witnesses confused the two occasions. On the first visit into the shaft, Minton admits that he was talking to Davis on the plankway; but, when he was injured, he had just opened the door and started into the shaft in the plankway.

The evidence further tends to show that this plank was placed across the skipway to enable employees to pass from one side of the skip to the other, and that it was habitually used by the men for that purpose, and in fact there was no other way for them to get to the east side of the skipway.

There is also evidence tending to show that the skipway was out of repair at the top near the point where it dumped, and in consequence thereof the skip had been several times wrecked at that point. There is proof that the skipway was examined a short time after the accident, and it had spread at the top and was out of fix, etc.

Defendant's testimony tended to show that on this occasion, the skip having been wrecked, several employees went up to repair it, and had been at work on it for a half hour. One of the men had taken this piece of iron ore and made out of it a heel for a prize, and about the

Coal, Iron & Railway Co. v. Minton.

time they got the skip in position the ore slipped and fell into the shaft.

It was further contended on behalf of the company that the plaintiff was perfectly familiar with every arrangement about the shaft; that he was an expert, and had himself, under the employment of the company some months prior thereto, sunk this shaft to its present depth; that he had constructed the gangway across said hallway in the shaft, and that after he had ceased to drive the shaft any deeper he had, as foreman of said shaft, driven the levels to the east and west therefrom, where he worked until some three months prior to the date of his injury; that he came back to La Follette a few days before his injury for the purpose of taking a contract to sink said shaft still deeper; that at the time defendant in error was injured he was on said gangway at the first level, talking to the witness Davis, and was not engaged in the pursuit of any business as an employee of the company; that he negligently exposed himself to danger by standing or sitting on said plankway while the haulage skip car was being operated in said compartment; and that while he was so sitting a piece of iron ore fell from above, negligently dropped by a fellow servant while engaged in some duty at the top of the shaft.

It is insisted on behalf of the company that this shaft was being constructed in the usual way, and that all its equipments were in a reasonable state of repair, and that the injury to plaintiff was not the result of any negli-

gence on the part of the company, but resulted from the negligence of a fellow servant of the plaintiff, and from the latter's gross negligence in assuming and remaining in a dangerous and exposed place, with full knowledge of its conditions, without taking any precautions to protect himself. This is a full statement of the theory of the defendant company.

We are of opinion, however, the company was negligent in not having provided a covering over the plankway to protect employees in crossing it from the danger of the falling ore. There is proof tending to show that lumps of ore frequently fell down the shaft, and this had been going on for some time, and there was nothing to protect the men against falling ore. One witness says it was an ordinary thing for ore to fall. It is in proof that the company knew that this ore was accustomed to fall, and had warned its men against passing through the skipway when the skip was above the level; but plaintiff testifies that no such warning had been given him, and this fact is admitted by the superintendent. When Minton sank the shaft under his first employment, the skipway had not been put in.

In *Virginia Iron Co.* v. *Hamilton,* 107 Tenn., 705, 65 S. W., 401, it appeared that plaintiff, a manufacturing company, put defendant, its employee, at work under an elevated railway track, upon and over which its employees were operating engines and cars, delivering material for the operation of its plant. By the negligence of defendant's fellow servants operating the engines and

cars, a stone fell from one of the cars upon defendant's head, inflicting the injury sued for. The defendant company had negligently failed to afford any protection of the place where plaintiff was put to work from stones falling from the cars above. It was held upon these facts that the company was liable.

While there is much proof in the record to sustain the contentions of the defendant company, we are of opinion the verdict of the jury is amply sustained by the testimony of the plaintiff and other facts and circumstances tending to corroborate his statement.

It is said, however, that Minton was guilty of such contributory negligence as should defeat his right of recovery, and that he assumed the risk incident to his employment from his familiarity with the premises and his experience in the business. All these matters belonged to the jury and were properly submitted to their determination.

The next assignment to be considered is that the court should not have stricken from the files defendant's plea of the statute of limitations. The plaintiff had previously brought a suit for the same cause of action, but said suit was dismissed on motion of defendant below for the failure of plaintiff to file a declaration. Thereafter the present suit was brought, more than twelve months after the injury occurred. A motion by plaintiff's counsel to strike out this plea was sustained by the court, to which action defendant excepted. The injury was sustained by the plaintiff on the 8th of July, 1902, but suit

was not brought until the 6th day of July, 1903. The summons was executed on the 19th day of July, 1903. Thereafter, on the 29th of October, 1903, that suit was dismissed on motion of defendant's attorney for failure of plaintiff to file a declaration. The second and present suit was brought on December 21, 1903, and summons was executed on February 2, 1904.

It will be observed that the first suit was brought only two days before the bar of one year would have been complete, and the second suit was brought within twelve months after the dismissal of the first suit, but more than twelve months after the injury was sustained, when it is said the cause of action accrued.

Defendant insists, on these facts, that the present suit is barred by the statute of limitations. Plaintiff cites in support of his position *East Tennessee Coal Co.* v. *Daniels,* 100 Tenn., 65, 42 S. W., 1062, wherein it was held that:

"A right of action is not saved from the bar of the statute of limitations, where, before it was barred, the plaintiff obtained the issuance of an original summons, which was delivered to the attorney, but never placed in the hands of an officer, and after the time of the statute had run dismissed his suit for want of service of process, and thereafter, within twelve months, brought a new suit. The first action was not commenced, within the meaning of the statute permitting a party whose suit brought in time has been dismissed upon some grounds, not concluding his right to renew his action within twelve

months after such dismissal, though the statute may in the meantime have run its course."

The whole point of that decision was that the summons had never been placed in the hands of an officer for execution, and hence there had been no commencement of a suit within the meaning of the statute.

Counsel also relies upon the case of *Anderson* v. *Bedford,* 4 Cold. (Tenn.), 464, wherein this language is used:

"In no case of which we are advised, where the failure of the action is due to the default, wrong, or laches of the plaintiff, has it been held sufficient to authorize the bringing of another suit under the exception of the statute within one year after the termination of the first."

However, an examination of this case will show that it was determined under the provisions of the statute of limitations in existence prior to the adoption of the Code of 1858, which went into effect on the first of May of that year. These acts, as embodied in the Code of 1858, are different in some essential particulars, and the case of *Anderson* v. *Bedford* was determined under the provisions of those acts as they were framed prior to the passage of the Code of 1858, and not as changed when brought forward in that Code. It will appear that the provisions of the statute of limitations relied on in the present case had their origin with the Code of 1858, and were not in existence when the suit of *Anderson* v. *Bedford,* supra, arose.

The language quoted by counsel from that case is, therefore, wholly inapplicable to the present case.

In *Sweet* v. *Electric Light Co.*, 97 Tenn., 252, 36 S. W., 1090, it was held that a suit brought in a court having no jurisdiction of the subject-matter would not prevent a bar of the statute and bring the case within the exception prescribed.

In *Cole* v. *Mayor and Aldermen of Nashville*, 5 Cold. (Tenn.), 639, it appeared that Cole instituted suit against the mayor and aldermen of Nashville in 1861, which remained on the docket until May, 1865, when the suit was dismissed on account of the loss of the files. The plaintiff within twelve months brought the second suit for the same cause of action. It was held by the court that the second suit was not barred because it was brought within the year, as provided by the statute, and it was not concluded by the decree in the first suit.

So in the case of *Railroad* v. *Pillow*, 9 Heisk. (Tenn.), 248, a motion to discontinue the suit was made by the defendant, and thereupon the plaintiff took a nonsuit, and judgment was rendered against him for costs, and within less than a year thereafter plaintiff commenced a new suit, and to this action a plea of the statute of limitations was filed. The court held that the above provision of the statute applied, and that the plea of the statute of limitations was bad. *Hooper* v. *Railroad*, 106 Tenn., 31, 60 S. W., 607, 53 L. R. A., 931; *Hooper, Adm'r*, v. *Railroad*, 107 Tenn., 716, 65 S. W., 405; *Iron Co.* v. *Broyles*, 95 Tenn., 612, 32 S. W., 761.

Coal, Iron & Railway Co. v. Minton.

In 19 Am. & Eng. Ency. of Law, p. 262, it is said:

"The original English statutes and most of the statutes in the United States provide for a new action where a judgment for the plaintiff is reversed on appeal or writ of error. But since these statutes have reference purely to the question of limitations, and are not intended to affect the rule of *res judicata,* manifestly the reversal must be on some ground not affecting or concluding the merits of the cause of action. Where, as under the Tennessee statute, the plaintiff is allowed to have a new action, where judgment is rendered against him upon any ground not concluding his right of action, the new action may be had when the plaintiff takes a voluntary nonsuit. In other jurisdictions, the nonsuit must be involuntary." *Gardner* v. *Michigan Central R. R. Co.,* 150 U. S., 349, 14 Sup. Ct., 140, 37 L. Ed., 1107; *Homer* v. *Brown,* 16 How. (U. S.), 354, 14 L. Ed., 970; *Manhattan Life Ins. Co.* v. *Broughton,* 109 U. S., 121, 3 Sup. Ct., 99, 27 L. Ed., 878; *Lindsay* v. *Allen,* 112 Tenn., 653, 82 S. W., 171.

We are of opinion, in view of these authorities, that it is wholly immaterial whether the nonsuit is voluntary or involuntary. The real question is whether the dismissal was on a ground concluding the plaintiff's right of action. It must be conceded that the dismissal of the suit by the court on the motion of the defendant for the plaintiff's failure to file a declaration is no adjudication of the merits of the controversy, and hence the plaintiff's right of action is not concluded. We have

so held in several unreported cases, and this is now the established practice. This court, in quoting the language of *Anderson* v. *Bedford,* supra, in *East Tenn. Coal Co.* v. *Daniel,* 100 Tenn., 65, 42 S. W., 1062, did not intend to approve it in the broad sense counsel now construe it; but the language was quoted as peculiarly applicable to the facts of that particular case. The same may be said in respect of the case of *Sweet* v. *Electric Light Co.,* 97 Tenn., 252, 36 S. W., 1090.

There was no error in the action of the trial judge in striking from the files defendant's plea of the statute of limitations, filed October 26, 1904.

We are, therefore, of opinion upon the authorities that a dismissal of the plaintiff's suit on account of his failure to file a declaration does not conclude his right of action, and hence the second suit in the present case was in time.

The third assignment of error is that the court erred in admitting the evidence of certain witnesses named, whose depositions were read in rebuttal to prove the good character of the plaintiff, for the reason that, this being a personal injury case, the character or reputation of plaintiff was not involved. We think the cross-examination of the plaintiff, Minton, covering about twenty-two full typewritten pages, showed an effort on the part of counsel to discredit the witness. It was held in this State, so early as the case of *Richmond* v. *Richmond,* 10 Yerg. (Tenn.), 345, that a witness may be impeached by proving that he is not worthy of credit, or that the facts

Coal, Iron & Railway Co. v. Minton.

to which he deposes are not true, or by cross-examination, in which he may be involved in inconsistencies; and it was held admissible under such circumstances to prove the good character of the witness. *Warfield* v. *Railroad Co.*, 104 Tenn., 74, 55 S. W., 304, 78 Am. St. Rep., 991.

Affirmed.