## MORRIS KLEIN and WIFE, BERTHA KLEIN, v. ILLINOIS CENTRAL RAILROAD CO.

Western Section.    February 25, 1927.

Petition for Certiorari denied by Supreme Court June 11, 1927.

1. **Negligence. Evidence. Evidence held to show plaintiff's action was barred by contributory negligence.**

   In an action to recover damages for injuries sustained in a crossing accident where the evidence showed that the plaintiff knew of the danger of the crossing and that when a car reached a few feet of the track the track could be seen in both directions for a long distance, although it could not be seen prior to that time, and the evidence further showed that plaintiff's car was almost stopped at the time that it passed on the track and was hit, held that under the facts, plaintiff was guilty of such contributory negligence as would bar his recovery.

2. **Negligence. Passenger, who knew of dangerous crossing and did not keep a look out, held guilty of contributory negligence.**

   In an action to recover for damages for injuries sustained in a crossing accident where the husband had told the wife of the danger of the crossing and she had insisted that he take the wheel of the car instead of the negro driver and the wife did not then keep a lookout for trains and the car was struck on the crossing by a train, held that there was a duty on the wife to keep a lookout as well as the husband, and since she did not do so, she was guilty of contributory negligence that would bar her recovery.

3. **Evidence. Evidence which contradicts physical facts and mathematical laws cannot be accepted as such.**

   In an action to recover for damages for personal injuries sustained in a crossing accident where both plaintiffs testified that at a given point they looked for a train and did not see one, and the physical facts were such that if they had looked they must have seen the train, held that since their testimony contradicted physical facts it could not be accepted as testimony and left no case for the jury.

Appeal in Error from Circuit Court of Shelby County; Hon. H. W. Laughlin, Judge.

Affirmed.

Ben W. Kohn, of Memphis, for plaintiff in error.

Sivley, Evans & McCadden, and J. P. M. Hammer, all of Memphis, for defendant in error.

OWEN, J. Morris Klein and wife, Bertha Klein, have both appealed from judgments rendered against them in the circuit court of Shelby county. Both instituted suits against the defendant Illinois Central Railroad Company in the circuit court of Shelby county for personal injuries received by them at the same time, and by consent the two cases were tried together before the court and jury. At the conclusion of plaintiff's proof a motion for a directed verdict was sustained. Both plaintiffs seasonably filed their motions for a new trial, which motions were overruled, and they have appealed to this court. Each has assigned errors. The assignments are: 1. That the court erred in directing a verdict against Morris Klein upon the ground that a failure to observe chapter 37, Acts of 1917. was such negligence as to bar a recovery. 2. That the court erred in directing a verdict for the defendant on the ground that plaintiff Morris Klein was guilty of such contributory negligence, as a matter of law, that his right of a recovery was barred. 3. That Mrs. Klein was guilty of contributory negligence because she acquiesced in the negligence of her husband.

The plaintiffs were struck by a passenger train of the defendant's, upon the defendant's railroad track in the village of Kerrville, Shelby county, Tennessee, on December 25, 1925, about 9:30 a. m. The plaintiffs were traveling from Ripley, Tennessee, to Memphis, Tennessee, on the day of the accident in a Ford truck. Also in this Ford truck was a colored man by the name of Andrew Shoat. The accident occurred where the dirt road crosses the railroad just north of the railway station at Kerrville. For some distance, as shown by the record from a quarter to three-quarters of a mile north of this dirt crossing, the railroad track runs straight north and runs in a straight direction south for a long distance. There are two railroad tracks at this crossing, the west track being used for southbound trains and the east track for north-bound. For something like a hundred and fifty feet the dirt road runs north of this crossing parallel with the west track and on the west side of the west railroad track, when the dirt road turns west. The dirt road crossing the railroad at right angles at this crossing.

Plaintiffs approached the railroad from the west. They came east until they got within about seventy-five or a hundred feet of the railroad track. At that time the colored man was driving the automobile or truck. The truck was stopped and the plaintiff Morris Klein took hold of the wheel and operated the car, driving it in a southerly direction and parallel with the west railroad track. The proof shows that he was driving the car at a very slow rate of speed, something like eight or ten miles an hour. The proof further shows that at this crossing the railroad is elevated something like five feet above the highway; that there is a lefthand turn, to turn to the left,

about fifteen feet from the railroad track, and in approaching the track from the west going east the automobile slowed down some, as this turn was made, and the grade was also made; that when the left front wheel of the truck got upon the west rail it was almost instantly struck by a passenger train going south. The proof further shows that the engineer sounded the whistle, or alarm, but as the whistle sounded the automobile was struck. Both Klein and his wife and the negro, Andrew Shoat, who was seated on the right-hand side of the automobile, or south side, with his back somewhat towards the north, his feet on the running board, being seated on the floor of the cab of the truck, were injured.

Klein was at the steering wheel on the left-hand side of the truck, this being the north side; Mrs. Klein was on the south or right-hand side of the truck. This truck had a cab or top over the seat. It doesn't appear that any curtains were up.

All three of these witnesses state that they looked and listened, but saw no train coming; that they looked both ways. Just how far the east track is from the west track doesn't appear. There is a diagram attached to defendant's brief, which we infer is a copy of the diagram that was drawn on the floor of the court room during the trial. This diagram indicates that the railroad tracks running parallel are only a few feet apart.

The proof shows that this passenger train was running about sixty miles an hour. One witness testified he heard the train blow about five seconds before the automobile truck was struck. The proof further shows that when Klein saw the train coming, and while very close to him, he got the automobile in a southerly direction, or to the right, undertaking to get his left wheel off the track. Some portion of the engine struck the left front wheel and the radiator of the truck. The parties were not thrown from the truck.

Klein testified that he almost brought his car to a dead stop just before entering upon the track; that he was probably a foot or two from the track when he brought his care almost to a dead stop. The proof further shows that Mr. Klein was familiar with this crossing; that he crossed there frequently; that he considered it a dangerous crossing; that he had told his wife about the danger; that she had never crossed at this crossing before, and that she was in a nervous condition on the day of the accident, was not well when they left Ripley returning to their home in Memphis, and it was Mrs. Klein who insisted that Andrew Shoat, the colored man, not attempt to drive across the railroad and that the change of drivers or chauffeurs was made when they reached a point about seventy-five feet from the crossing. The proof shows that within a distance of five to eight feet of the crossing of the railroad an unobstructed view up to the curve can be had, which the witnesses placed from a quarter to

three-quarters of a mile north of the crossing. Klein testified that he looked when he was within two feet of the crossing, to the north, and saw no train.

The physical facts show that if he had looked when within two feet of the crossing, and as he was going very slow, the train was in view.

Mrs. Klein testified that she was not talking; that she was looking; that when she did see the train "it was right on us;" that the "train struck so sudden" and she did not know anything for sometime afterwards.

The plaintiff's cause of action is based upon the common law. It was alleged that the defendant was negligent in that the agents and servants of said defendant in charge and control of said train were not on a proper lookout ahead; did not blow the whistle for said crossing; or sound a bell or give any warning to the users of the public road of the approach of said train. It was further alleged that this was an extra train, operated to take care of the holiday travel. It was further alleged that the defendant was negligent in that their said agents and servants did not do all in their power to prevent an accident after the danger of said collision was apparent, or should have been apparent, by the exercise of ordinary and reasonable care.

The trial judge, in sustaining the motion for a directed verdict, said: "The facts are most conclusive that this is a dangerous crossing in one sense. You might say that all railroad crossings are dangerous, at least the law tries to impress the people with that fact. But this is no more dangerous than other crossings except in the one particular that you have to come up closer to this crossing before you can see an approaching train. But when you do get in that position, then it is a safe crossing on account of the great distance at which you can see an approaching train. Now, he seems to have been cognizant of that fact of this being a dangerous crossing in that sense, changed drivers down there, took the wheel himself and came around up there in an apparently cautious manner so far as all the evidence discloses; run up to the crossing and either on it or so close thereto as that a train struck him or the engine drawing the train struck him and damage was done.

"Now, he, himself, states that when he was within two feet, as I recall the testimony of it, if I don't recall it correctly, you may correct me—that he looked and there was no train at all. His wife here, the plaintiff, testifies to the same thing, that she looked and that there was no train coming. And therefore he proceeded on the track.

"Now, the law is that when the vision is unobstructed and you look, or say you looked and say that you don't see an object, where

that object is there, that your statement in that regard cannot be accepted as evidence. You are bound to see what may be seen. That is the law.

"Now, however fast that train was coming, these plaintiffs, both of them, had they been in the exercise of due care for their safcty— because the uncontroverted evidence in this case shows that that curve was at least three-quarters of a mile from the point where the collision occurred and no matter how fast the train was running, if it had been running one hundred miles an hour instead of 60 miles an hour, if these plaintiffs had looked at the point where they say they looked, and their eyes had worked, which the law says they must do, they could have seen the train in time to have avoided the collision.

"Now the court in this case finds that that is a fact so plain as that reasonable minds cannot differ about it, and that being true, the law makes it the court's duty to act in the matter."

The trial judge summed up the undisputed facts in passing on the motion for a directed verdict. He was also of the opinion that the plaintiffs were guilty of violating the automobile statute known as chapter 36 of the Acts of 1917, which requires the driver of an automobile to bring the car to a stop within ten feet of the railroad track when he attempts to drive the automobile across a railroad, and that the plaintiff Klein not having brought the car to a stop just before crossing the railroad, was guilty of negligence per se and that Mrs. Klein acquiesced in this negligence of her husband.

The question to be determined is whether or not the contributory negligence of the plaintiffs, or either of them, bars their right of recovery as a matter of law.

Counsel for plaintiffs insist that contributory negligence and proximate cause is a question for the jury. He relies upon and cites the following cases in support of his proposition: Tyrus v. K. C. Railway, 1114 Tenn., 579, 86 S. W., 1074; Lafollette Railway v. Minton, 117 Tenn., 415, 101 S. W., 178; Norman v. Southern Railway, 119 Tenn., 401, 104 S. W., 1088; Hurt v. Y. & M. V. Railway, 104 Tenn., 639; 205 S. W., 437, and Hines v. Partridge, 144 Tenn., 235, 231 S. W., 216.

Counsel also cites in support of his contention the case of N. C. & St. L. Railway v. Lizzie White, Shelby Law, unreported, but accompanies his brief with a copy of the opinion of this court, written by the writer of this opinion, decided at Jackson, May 15, 1924.

Counsel also cites the case of C. G. Crawford, Admr., v. N. C. & St. L. Railway, reported in 153 Tenn., 642, — S. W., —, in which latter case it was held that the failure of the driver of the automobile to comply with Chapter 36 of the Acts of 1917, was not negligence per se and did not absolutely bar recovery for injuries caused by

the railroad's failure to observe the statutory precautions, but would do so in common-law actions.

Referring briefly to the cases relative to the question of contributory negligence and its being a question for the jury, cited by counsel for plaintiff, the case of Tyrus v. Railroad, supra, was an action brought to recover damages for an injury alleged to have been inflicted by the defendant upon a lot belonging to the plaintiff by gathering surface water in a body and sending it through a culvert upon the plaintiff's lot, whereby the lot was permanently damaged. It was held "where there is no controversy as to any material facts, the trial judge may instruct the jury to return a verdict in accordance with his view of the law applicable to such ascertained or uncontroverted facts; but there can be no constitutional exercise of the power to direct a verdict in any case in which there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence, upon the issues to be tried," citing numerous cases at page 579 in support of this announcement of the law.

In the case of Lafollette Railway v. Minton, supra, the defendant was held in damages for personal injuries to plaintiff caused by defendant's negligence in failing to protect plaintiff from falling ore in the mine shaft. There were controverted questions of fact in the Minton case as to whether or not the plaintiff knew of the dangerous surroundings or had had any warning from the defendant, and whether or not the plaintiff had been furnished a safe place in which to work, and, of course, it was proper to submit these controverted issues to the jury.

In the case of Norman v. Railroad, supra, the plaintiff's intestate was a switchman who lost his life while engaged in switching operations for the defendant, it being alleged that the car on which the deceased was riding received a sudden jerk which was caused by a broken link in the coupling. This defect in the car was well known to the deceased. There was a directed verdict in the lower court and the judgment of the lower court was affirmed by both this court and the Supreme Court.

In the case of Hurt Admr. v. Railroad, supra, the plaintiff's intestate, Dr. Nelson, in company with Dr. Lewis, was returning from visiting a patient and performing an operation. They were practicing physicians in the city of Memphis, and as Dr. Lewis drove his automobile upon the railroad crossing he was struck by a train. The Supreme Court held that the fact that persons injured in a collision at a crossing were in an automobile does not change the rule of ordinary care for their own safety at the time of the accident, but is a circumstance for consideration in determining the standard of care which must govern them, and the degree of care they must

exercise.  It was further held that in the case of crossing a railroad track, the look and listen rule is the proper measure of duty under ordinary circumstances, but circumstances may exist making the rule inapplicable.  The facts in the Hurt case show that the intersection of the railroad and the dirt road is commonly known as a ''blind crossing.''  The train in proceeding south over the tracks of the company passes through a deep cut which emerges a short distance north of the road crossing.  The walls of this cut are stated to be about twenty-five feet high, except at the south end, where the walls gradually decline to a level with the railroad tracks.  On the east side of the cut are a great many trees, vines, etc., which obstruct the view of one traveling the dirt road as it enters on the railroad track.  A traveller on the dirt road cannot see the train emerging from this cut until he is within about twenty feet of the crossing, and that the engineer and fireman on the train cannot see the traveler sooner. The automobile was moving at a rate of speed from twelve to fifteen miles per hour when Dr. Lewis, the driver of the automobile discovered the approach of the train.  The engine struck the automobile about the rear wheel.  The automobile was carried on the pilot of the engine about three hundred feet and was totally wrecked.  Dr. Nelson received injuries from which he died.  The plaintiff's proof is that the train was seen by them as soon as it could have been seen.  The engineer testified that he did not see the automobile until he was in the act of striking it.  The fireman did not see the accident at all.  There was a signboard at this crossing in the form of an ''X'' with the words ''Railroad Crossing'' upon the same.  The proof tended to show that the whistle was not sounded for this crossing.  Plaintiff's action was based upon the non-observance of the statute, sections 1574, 1575 and 1576 of the Code.  Dr. Nelson saw the train at the earliest point at which it could have been seen, and gave warning to Dr. Lewis.  The train was then two hundred feet away. The court held that the engineer could have seen the plaintiff at the same time, and if he had applied his emergency brakes it is probable the accident would not have occurred, and it was for the jury to determine the negligence of Dr. Nelson, if any, and its degree, and whether it proximately or remotely contributed to his death.  The court further said:  ''We think that Dr. Nelson was under the duty of exercising due care for his own safety notwithstanding that Dr. Lewis was driving the automobile.''  This case was reversed by the Supreme Court because the trial judge in his remarks in overruling the motion for a new trial showed that he was dissatisfied with the verdict because he believed the law and facts were against the plaintiff.  The Supreme Court could not affirm such a holding, citing Hamburger v. Railroad, 138 Tenn., 123, 196 S. W., 144.

In the case of Hines v. Partridge, supra, plaintiff and his wife were struck and the wife killed, where Market street in Chattanooga, Tennessee, crosses the defendant railroad. There were a number of counts in the declaration, two counts being based upon the violation by the defendant of two ordinances, which ordinances had been passed by the city of Chattanooga and in force at the time of the accident. The first ordinance alleged to have been violated was, that the defendant had failed to have a watchman on duty at Market street at the time of the accident. The second ordinance alleged to have been violated was, the train was being operated at a speed in excess of four miles per hour. The court held that this ordinance was reasonable and there was evidence showing a violation of both of these ordinances at the time of the accident; so the cases cited and relied upon by learned counsel for plaintiff are readily distinguished from the instant case.

The case of White v. N. C. & St. L. Railway, went to the jury. That was an accident occurring at a railroad crossing out some miles from Memphis near Cordova. The physical conditions surrounding this crossing were very similar to the conditions at the crossing as set out in Hurt v. Y. & M. V. Railroad, supra; and, furthermore, the fireman saw the plaintiff's in the White case when the engine was several feet from the crossing and he neglected to promptly notify the engineer. Furthermore, in the White case the last·clear chance doctrine was invoked and there was evidence to sustain this doctrine upon the testimony of the plaintiffs and the fireman. In the instant case the last clear chance doctrine is not involved and cannot be applied, for the undisputed facts show that just as the left wheel of the automobile got upon the rail the collision occurred. Plaintiff, Morris Klein had brought his automobile practically to a stop when he was a few feet from the west rail of defendant's track, and the engineer on the look-out, or the fireman, had the right to presume that the automobile would stop, and not attempt to make the crossing at the time it did.

We are of opinion that under the undisputed facts, and giving the plaintiff that view of the evidence most favorable, the direct and proximate cause of the collision between the defendant's engine and plaintiff's automobile was due to the contributory negligence of Morris Klein, and all of his assignments of error are overruled and disallowed.

It is insisted that, as to Mrs. Klein, a different rule of law applies; that she is not to be held accountable for her husband's failure to stop the automobile as required by the Acts of 1917, chapter 36, with reference to the duty of the driver of an automobile in approaching a railroad crossing, and it is also insisted that the negligence of the husband cannot be imputed to the wife to prevent her recovery

for her injuries, citing Knoxville Railway & Light Company v. Van Gilder, 132 Tenn., 487, 178 S. W., 117. In the Van Gilder case we find that the husband was driving an automobile at night, in a dark place on the highway, so fast that he could not avoid an obstruction within the distance lighted by the lamps, although just before the accident the bright lights of an approaching automobile and a curve where his own light did not shine directly in the way the machine was going hindered him from seeing the obstruction. The husband's contributory negligence barred his action, the court citing and approving West. Const. Co. v. White, 130 Tenn., 520. The court, in permitting Mrs. Van Gilder to recover against the defendant, said:

"Her husband's negligence was not imputable to his wife, who was riding with him, so as to bar her right to recover for her own injuries, where it did not appear that the danger was obvious or known to her, and that she did not rely on the assumption that her husband would exercise care and caution. Thus it is seen that Mrs. Van Gilder did not know of the danger and it was unknown to her."

In the instant case, the husband, Klein, was well acquainted with the dangers of the crossing. He had informed his wife of its dangerous condition and she became so apprehensive as to have the colored man driving the automobile to release the wheel and the husband to take charge, some seventy-five feet away from the crossing. She had been informed of its condition, the up-grade approaching the crossing, etc., but after this change was made, and the husband took charge of the wheel of the automobile and proceeded towards the crossing, Mrs. Klein was still under the duty to look and listen for any approaching train. She was not on the rear seat of the vehicle, as shown in the case of Crawford v. Railway, supra, but was seated by the side of her husband. It doesn't appear that there were any curtains up and her view was not obstructed in any way. She could discover the approaching train as quickly as her husband could. The colored man was seated on the floor of the cab, with his feet on the running board or fender of the car and upon the side upon which Mrs. Klein was seated, and could not get the view of the approaching train that the husband and the wife could. It is true that these plaintiff's testify that they looked and listened, but the evidence shows that they had good eyesight, and both plaintiffs must be held to have seen what they ought to have seen, and we cannot see any reason why they should not have seen this approaching train in time to have stopped the automobile, which was barely creeping along, and prevented the accident.

We are of opinion from the physical facts that the plaintiff's are mistaken when they say that they looked both ways and listened. When the change of the drivers of the truck was made some seventy-five feet from the track, the car was stopped and then started again,

and we think that the only natural conclusion to reach is that Mrs. Klein felt so secure in having her husband at the wheel that she did not look or listen for any approaching train, after the husband took charge of the automobile, and that she honestly believed that she did look and listen, but the physical facts contradict her statement. Evidence which contradicts physical facts and mathematical laws, cannot be accepted as such. Railroad v. Justice, 5 Higgins, 69.

Learned counsel for defendant has furnished us with a memorandum opinion delivered by Chief Justice Green in the case of R. N. Chambliss v. L. & N. Railroad Co., Haywood Law, decided at Jackson, Tennessee, ——— Term. In that case the plaintiffs were struck at a crossing in Brownsville, Tennessee, while said plaintiffs, who were mother and daughter, were driving an automobile. Each testified that they looked and listened and saw no train. The court held that the physical facts showed if they had looked they would have seen the train; that they were familiar with the crossing and that they were guilty of contributory negligence which would bar a recovery. There was a directed verdict in the lower court, which action was approved by the Supreme Court. This was a common-law action.

It results that all of the assignments of error of Mrs. Morris Klein are overruled and the judgment of the lower court is affirmed. The defendant will recover of the plaintiffs and their sureties on appeal bond the cost of appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.