RIDGWAY SPRANKLE Co. *et al. v.* CARTER.

(*Knoxville,* September Term, 1940.)

Opinion filed October 5, 1940.

Howard H. Baker, of Huntsville, and Jeffers & Jeffers, of Oneida, for plaintiffs in error.

H. K. Pemberton, of Huntsville, Jennings & O'Neil, of Knoxville, and C. A. Templeton, of Jellico, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

Mrs. Elbert F. Carter instituted this suit against Ridgway Sprankle Company, a corporation, and George T. Webb, the agent in charge of its property in the town of Helenwood, to recover damages for injuries to her dwelling as the result of an explosion of a quantity of powder and dynamite which plaintiffs in error had stored in a wooden building located in the vicinity of said dwelling.

The jury returned a verdict in favor of Mrs. Carter and against both plaintiffs in error for $600, whch was approved by the trial court and his judgment affirmed by the Court of Appeals. The facts as found by the latter court, which are not questioned by any assignments of error, are as follows:

"The proof shows that defendants stored a quantity of dynamite or powder in a flimsy and inflammable struc-

ture located only a few feet from other buildings on adjoining property. No attempt appears to have been made to guard the building or prevent the spread of fire from other buildings located in the community which is shown to have been thickly settled. On the occasion in question, a building on adjoining property burned and the flames spread to defendant's property. The walls of the building where the explosives were stored were covered with an inflammable material and the building, according to the proof, was in a bad state of repair. As a result, the explosives became ignited and a terrific explosion occurred which damaged property within a radius of several hundred yards.

"While the statute, Code Section 5228, is not applicable to unincorporated towns, we think defendants were guilty of common law negligence in storing high explosives within a thickly populated community without providing safeguards reasonably calculated to prevent explosions caused by circumstances which, in the ordinary course of events, should have been foreseen by a person of ordinary caution and foresight.

"One dealing with such materials is charged with the duty of exercising a degree of care proportionate to the danger involved. *Gannon* v. *Crichlow*, 13 Tenn. App., 281."

It appears, furthermore, that several citizens had complained to Mr. Webb about the dangerous situation created by the storage of these explosives, but he only laughed and took no steps to obviate the danger. In these circumstances we think the question of negligence of the plaintiffs in error was one for the jury to decide.

In this court no error is assigned as to the amount of damages adjudged.

The principal defense invoked by the plaintiffs in error

is the Statute of Limitations of three years, section 8598 of the Code, which is as follows: "Actions for injuries to personal or real property; actions for the detention or conversion of personal property, within three years from the accruing of the cause of action."

Section 8571 of the Code provides: "The suing out of a summons is the commencement of an action, within the meaning of this chapter, whether it be executed or not, if the action is duly prosecuted and continued by the issuance of alias process from term to term, or recommenced within one year after the failure to execute."

The explosion occurred on April 16, 1935. A summons was issued by the clerk of the circuit court on April 14, 1938, and delivered to one of the counsel for plaintiffs in error, who, in turn, placed it in the hands of a deputy sheriff on either the 16th or 17th of April, 1938, and he executed it in full on April 22, 1938. Upon these facts the Court of Appeals, with reference to the summons, said: "It was promptly delivered to the sheriff within not more than three days after its issuance, indicating that it was issued with the *bona fide* intention of having it served upon the defendants." This finding of *"bona fide* intention," which is the controlling factor, is not questioned by counsel for plaintiffs in error. But counsel take the erroneous position that the determinative fact is whether the summons was placed in the hands of the officer before the Statute of Limitations became effective.

The controlling principle is thus stated in 1 C. J., 1154, 1 C. J. S., Actions, section 129: "It is essential that the process shall be issued with the *bona fide* intention that it shall seasonably and in due course be served, and if it is issued provisionally, as where it is not to be served until further instructions, or until a certain time

or event, the action will not be considered as commenced until the date or contingency specified.''

Among the cases cited in support of the text is that of *East Tennessee Coal Co.* v. *Daniel*, 100 Tenn., 65, 42 S. W., 1062, an authority upon which counsel for plaintiffs in error rely.

In *Johnson* v. *Farwell*, 7 Me. (7 Greenl.), 370, 22 Am. Dec., 203, the court, in commenting upon the question we are considering, said: ''In *Bronson* v. *Earl*, 17 Johns. [N. Y., 63], 65, it is said, that it is the intention and act combined, which, in fact, constitutes the commencement of the suit; because a writ filled up with no intention of service is altogether inoperative, as it may be filled up before the cause of action commences, or be antedated. . . . So, in New York, it is not necessary to show that the writ has been returned, nor even that it was actually delivered to the sheriff, but it is sufficient if it appear that the writ was made out and sent to the sheriff or his deputy, by mail or otherwise, with an absolute and *bona fide* intention of having it served. *Burdick* v. *Green*, 18 Johns. [N. Y.], 14. Suing out the writ with a view to service is an act of legal diligence within the time of limitation. It shows that the party has not slumbered the period prescribed to bar his rights. Ballant., 121.''

Also in *Haskell* v. *Brewer*, 11 Me., 258, 261, it is said: ''A writ may be made, to be used or not, as circumstances may thereafter require. It may be filled up and kept in the plaintiff's pocket for months without any determination on his part to have it served. . . . In such cases . . . the action would not be considered as commenced until there was a bona fide intention of having the writ served.''

In *Cross* v. *Barber*, 16 R. I., 266, 268, 15 A., 69, 70, the court made this statement: ''But when it is said that

the issuing of the writ is the commencement of the suit, it is not intended that the mere filling up of the process, or the mere sending it to an officer, or placing of it in his hands, is such commencement. These acts, to constitute them the commencement of the suit, must be accompanied with a *bona fide,* absolute, and unequivocal intention to have the writ served.''

The foregoing authorities are in harmony with the holding of this court in *East Tennessee Coal Co.* v. *Daniel, supra.* That was a suit for personal injuries received on May 3, 1892. An alleged action was commenced on April 29, 1893, which lacked only four days of being twelve months from the date of injury. On November 7, 1893, six months after its commencement, the action was dismissed, and within twelve months after such dismissal a new action was begun to which defendant plead the one-year statute in bar of plaintiff's action.

In that case the only record evidence was an entry on the rule docket reciting: ''Summons issued April 29, 1893,'' and a minute entry made on November 7, 1893, stating that ''plaintiff comes and dismisses his suit for want of due service of process,'' etc. There was no proof that the original summons was ever delivered to the sheriff, or that it was ever returned by that officer. Mr. Ford, who was clerk of the circuit court at the time the original summons was issued, states that he does not remember to whom he issued the process—whether to the sheriff or counsel—that sometimes counsel take out the process with them and sometimes they leave it for the sheriff. Mr. Ford further testified that the summons, to whomsoever issued, was never returned, and the place where the return would have been copied on the appearance docket is blank.

The court held that the mere handing of a sum-

mons by the clerk to plaintiff's counsel, without it ever going into the hands of an officer, or without any other step being taken to execute it or to proceed with the suit in any regular form, is not such commencement of an action within the meaning of the statute making an exception to the bar of the Statute of Limitations; and that the plaintiff had failed to carry the burden resting on him of showing a *bona fide* intention of having the summons served on the defendant.

As previously stated, counsel representing the plaintiffs in error in the instant case have not questioned the finding of the Court of Appeals that the summons "was issued with the *bona fide* intention of having it served upon the defendants." That being true, under the statute as heretofore construed, we think the trial court and the Court of Appeals were correct in holding that the cause of action of the defendant in error was not barred by the three-year Statute of Limitations, and the writ of *certiorari* is therefore denied.