## THE CINCINNATI, HAMILTON AND INDIANAPOLIS RAILROAD COMPANY v. REVALEE.

[No. 2,029. Filed Feb. 23, 1897. Rehearing denied May 26, 1897.]

RAILROADS.—*Injury of Passenger Alighting from Train.—Contributory Negligence.*—A passenger on a railway train, who goes upon the platform of the coach while the train is going very slowly preparatory to stopping at her destination, and when the train has stopped attempts to alight, but in doing so is thrown upon the station platform by a sudden starting of the train without warning, is not, as a matter of law, guilty of contributory negligence. *pp. 660, 661.*

EVIDENCE.—*Variance Between Pleading and Proof.*— In an action by a passenger for personal injuries, proof that such passenger, while standing on the lowest step of a car waiting for the train to stop, was thrown from the car by a sudden starting of the train, is not a material variance from a complaint alleging that the train had

stopped but started with a sudden jerk before she had the time to alight, and threw her upon the platform. HENLEY and WILEY, JJ. Dissenting. *pp. 668–672.*

From the Fayette Circuit Court. *Affirmed.*

*R. D. Marshall* and *T. M. Little,* for appellant.

*Reuben Conner* and *J. M. McIntosh,* for appellee.

BLACK, J.—The appellee sued the appellant to recover damages for personal injuries. The complaint, omitting the introductory matter, about which there is no question, alleged, in substance, that on the 29th day of September, 1894, the appellee purchased of the appellant's passenger ticket agent at Connersville, a round trip ticket from that place to Lockland, Ohio, and in consideration of the price paid, etc., the appellant agreed and was bound, as a common carrier, to carry appellee safely, etc.; that appellee on said day took passage at Connersville on one of appellant's regular passenger trains, which, by the rules of the appellant and by the schedule prepared by it for the information of the traveling public and its agents, was, on that day, scheduled to stop for receiving passengers on said train, and allowing passengers to alight from it at both of said places; that the conductor, or agent of the appellant, in charge of the train accepted that portion of the ticket for the appellee's fare from Connersville to Lockland; that the appellant's agent in charge of the train, when it was within one-half mile of the town of Lockland, notified appellee that the train was approaching that town, and told her to be in readiness to get off, as the train was late and would not stop long at appellant's station; that appellee had with her, and in her charge, her infant child, which, on account of its tender years, was not able to walk or take care of itself; that as the train

approached the appellant's station at said town, appellant's agents in charge of the train called out in the coach, where appellee was riding, the name of appellant's station at said town of Lockland, notifying the passengers within said coach that the train would stop at Lockland, and that it was the next station at which it would stop; that as soon as said station was so called, the appellee prepared to leave the train; that as it approached said station the train decreased its speed to such an extent that when it reached the station it almost stopped; that appellee, with her child in her arms, was at the door of the coach in which she was riding when the train had reduced its speed until it almost stopped, as aforesaid, and then stepped out on the platform of the coach, at which time the train wholly stopped at said station, and the appellee immediately, with her said child in her arms, attempted to alight from said train; that she, with reasonable expedition, immediately, and with due care, and without any fault on her part, descended the steps of said coach; that just as she reached the last or bottom step of said coach, and was just in the act of stepping therefrom, in her attempt to alight from said train, as aforesaid, the appellant's agents in charge of the train, without warning or caution to her, and without giving her a reasonable time to alight from said train, unlawfully and negligently started said train with a violent jerk, by reason of which she was thrown, without any fault or negligence of hers, off said step to the stone platform or pavement which the appellant had provided at said station for its passengers to alight upon; that she was thrown in so violent a manner, and with such force, that her head, arms, back, and shoulders struck upon said pavement with such force that, etc., her injuries being described. It is further alleged, that the train did not stop at

said station long enough for her to alight in safety, but, on the contrary, it barely came to a stop until it was started with a violent jerk, throwing her off, as aforesaid; that the agents of the appellant in charge of the train, long before said station was reached, knew that appellee had said small child with her, and that it would be necessary for her to carry said child from the train, and, knowing this, appellant unlawfully and negligently failed to have any agent or servant at the proper place to assist the appellee in alighting from the train; that the appellee was without fault on her part in all things, and the injuries which she sustained were all the result of the carelessness and negligence of the appellant, as aforesaid; that by reason of said injuries she had sustained damages in the sum of $5,000.00. Wherefore, etc.

A demurrer to the complaint for want of sufficient facts was overruled. The appellant answered by general denial. Upon trial of the cause by jury, a general verdict for the appellee for $2,500.00 was returned.

The appellant's motion for a new trial was overruled, and judgment was rendered on the verdict.

It is contended on behalf of the appellant that the complaint shows that the appellee's negligence contributed to her injury. It is urged that for a woman to go upon the platform or down on the steps with a child two years old in her arms, when the train is in motion, is negligence. The complaint alleges that appellee was at the door when the train had reduced its speed until it almost stopped; that she then stepped out on the platform, "at which time the train wholly stopped," etc. If the complaint shows that the appellee went upon the platform while the train was in motion, it does not show that she descended the steps and attempted to alight while it was in motion. It shows with sufficient certainty that she descended the

steps and attempted to alight when the train stopped, and that thereafter the train was started with a violent jerk, by reason of which she was thrown off the step to the stone platform; that the train did not stop long enough for her to alight in safety, but it barely came to a stop until it was started with a violent jerk. It does not appear from the complaint that the appellee was injured while she was upon the platform, or that her going upon it caused her injury, or contributed directly to it. If she had remained there, she would have been in a place of safety. We cannot say, then, that it was negligence for her to go out upon the platform.

The particular allegations of the complaint are not so inconsistent with its general allegations that the appellee was without fault or negligence, as to overcome the effect of those general allegations. The objection made to the complaint in argument does not seem to be well taken.

The sufficiency of the evidence to sustain the verdict is questioned by appellant. The evidence showed that the appellee was accompanied by her father and his daughter-in-law, and appellee's child, two years and about two months old; that appellee went upon the platform of the car and down to its lowest step with her child upon her left arm; that her sister-in-law and father followed her from the car to the platform thereof, and were still upon the platform when she was injured.

There was a wide difference between the evidence introduced by the appellant and that produced by the appellee, as to the manner in which she received her injury.

The evidence of the appellant tended to prove that the train stopped at the station, in front of the depot, and remained there from one minute and a half to

three minutes; that while it so remained a number of passengers alighted and other passengers went upon the train; that trainmen upon the depot platform helped ladies on and off the train, and that a brakeman was yet on the depot platform when the appellee fell; that the conductor, who was on the depot platform unloading and loading passengers, having seen that nobody was coming out, asked the brakeman, who was toward the rear, how it was back there, and he having said "All right," the conductor gave the signal to go ahead, and the train started to leave the station, the conductor getting on as soon as it started; that after it had started, and while it was in motion, the appellee and her sister-in-law and father came out of the car to its platform; that the appellee went down the steps of the car platform to the lowest step with her child upon her arm, and stepped off upon the depot platform, which was a cement walk, and fell upon it; that a brakeman who was standing on the depot platform, saw the appellee come out of the car and step down on the platform as if to get off; that he hallooed to wait and not jump off, and gave a signal to stop the train; that the train stopped after having run the distance of from the length of a car to three or four car lengths, but before it stopped, and after it had run about half the length of a car or a car's length, appellee jumped off; that when she did so the train was moving about as fast as a man can walk at an ordinary gait, or about four miles an hour; that the car step, from which she jumped, was about a foot above the depot platform; that the appellee took hold of the hand rail on the coach and swung herself off and fell backward; that the brakeman reached out both hands and caught her, as she fell, by her shoulders; that her weight brought him down and her head hit his knee; that he picked

up the child and assisted appellee to the ladies' waiting room.

The evidence introduced by the appellee tended to prove that she had previous knowledge of the locality; that before reaching the station a trainman announced it in the car and told the passengers to be prepared, and that the train was a little behind time; that when the train whistled for the station she took her child on her left arm and went to the front door, her father and her sister-in-law following; that she opened the door, and went out upon the platform; that the train was slowing up when she opened the door, and it slowed up until she thought it was ready to stop, and she stepped down to the lower step and stood with her child on her left arm and held on to the projecting iron on the side of the car with her right hand, and had her right foot extended ready to make the step off when the train would stop; that it did not stop, but started up with a jerk, which made her lose her balance and threw her, and when she knew she was going she made the jump to save herself from falling, and alighted upon a cement platform on the back of her head and left shoulder, arm and hip; that when she fell she knew that some one, the conductor or brakeman, hallooed at her, saying, "Don't jump, lady," or "Woman, don't jump there, you will get hurt;" that she was then too far gone, had lost her balance and had started to fall; that when she stepped down, the train was slowed up so that she thought it would stop every minute; that when she started down the steps the train was slowing up so that a person would think it would stop, that it was just barely moving; that at the time of her injury she was a stout, hearty woman, her weight averaging from one hundred and seventy-five to one hundred and eighty pounds; that when she got down on the lower

step the train was, "in a manner," stopped, and she expected every second for it to stop, but it did not stop still; that, at some time after the party had gone out of the car, her father told her she had better be careful; that the train was stopped by signal; that it came to a stop after passing the depot, and the father and sister-in-law then got off. One of the appellee's witnesses, her father, nearly seventy-eight years old, whose sight and hearing were bad, testified, among other things, that when the appellee went out upon the platform the train was running slowly; that it was catching up every once in a while, and would go ahead; that when she went down on the lower step the train was running slowly, but it would jerk up; that as it was running it would jerk up and then run out again, that is, it would run a little further, and then jerk up. The appellee's sister-in-law testified, that as the train slacked its speed, appellee went to the step, and as it slowed up it went very slow, and she stood there waiting for the train to stop, with her baby on her left arm and holding with her right hand to the iron at the side of the car; that it came very near stopping, and she stood there ready to get off; and when she was standing there waiting for it to stop, the train started up with a jerk and kept going faster and faster; and that she fell off with the jerk.

It was testified by the appellee, that when she stepped down on the step, the train was running in such a manner that it was so slow that anybody would go down to make the step off as soon as it would stop; that "it was so slow that you could just barely see it move, and that is all, and I got down onto the step."

In *Reibel, Admx.*, v. *Cincinnati, etc., R. W. Co.*, 114 Ind. 476, the general rule was stated to be, that passengers who are injured while attempting to get upon

or off a railroad train while it is in motion cannot recover for their injuries; that to this general rule some exceptions have been recognized, one of which is, when the passenger is either ordered or invited by the company or its agents to get on or off, notwithstanding the motion of the train; but that a passenger must not attempt to get on or off a train which is in motion, if it be obviously dangerous to make the attempt, although he may have been advised or even ordered to do so by the servants of the company, when he is a person of ordinary intelligence and not acting under constraint; that while it is the plain duty of a railroad company to stop its train at the place of a passenger's destination long enough to permit him to get off with safety, the fact that a train is about to pass such a place of destination without stopping does not justify the passenger in incurring serious risk by jumping from the train.

In *Louisville, etc., R. R. Co.* v. *Crunk*, 119 Ind. 542, 553, it was said: "We cannot adhere to the doctrine that the attempt to voluntarily leave a moving train, regardless of the speed and circumstances under which the attempt is made, is negligence *per se*."

In the case last mentioned it was said, also, "The fact that a person voluntarily alights from a moving train is not a conclusive presumption of negligence on his part. The rate of speed the train has acquired, the place, and all the circumstances connected with the alighting, are to be taken into consideration in determining whether or not the person was guilty of negligence on his part in leaving or attempting to leave the train."

*Pennsylvania Co.* v. *Marion*, 123 Ind. 415, 7 L. R. A. 687, 18 Am. St. 330, was an action for damages for injury suffered by the plaintiff in stepping off a slowly moving train. It was held that the question whether

alighting from a moving train constitutes negligence or not, is a fact to be determined by the jury trying the cause, taking into consideration all the circumstances in connection with the alighting. In that case, the evidence, which was held sufficient to support the verdict against the railroad company, showed as to the rate of speed, that the train was moving at the rate of not over two miles an hour, or at the speed of an ordinary slow walk of a person.

In *Louisville, etc., R. R. Co. v. Bean,* 9 Ind. App. 240, the court held that it is not necessarily negligence *per se* for a passenger to step from a moving train, but it is only where the facts are undisputed, and but one inference can be reasonably drawn therefrom, that the court will adjudge negligence or contributory negligence, as a matter of law.

In *Toledo, etc., R. R. Co. v. Wingate,* 143 Ind. 125, the complaint showed that when the passenger, a woman, acquainted with the locality, loaded with many bundles, reached the door, the car was moving with a gentle motion; that she went upon the platform of the car, and then finding that the car was still moving and more rapidly, and not seeing any one to assist her, she was stricken with dismay and fright, and seized with fear that she would be carried past the station and away from home, and feeling that she must get off, and yet believing and expecting that the conductor or other trainmen would meet her, take her bundles and packages and aid her in alighting, as was their duty and custom with female passengers, she proceeded down the steps of the car, etc.; that at or about the time she reached the lower step of the car, the speed of the train was negligently and suddenly quickened, whereby she was thrown upon the depot platform, which was twenty-six inches below

the lowest step of the car. It was held that the complaint showed contributory negligence.

In *Cincinnati, etc., R. R. Co.* v. *McClain* (Ind. Sup.), 44 N. E. 306, it was held that a passenger wishing to alight at a certain crossing, the conductor having told him that he could get off there without danger, was guilty of negligence in going upon the lower step of the platform at night, and while the train was running at a speed of 11 or 12 miles an hour.

In *Cleveland, etc., R. W. Co.* v. *Moneyhun, Gdn.,* 146 Ind. 147, it was held that a passenger, who was a person having capacity to be guilty of contributory negligence, was, as a matter of law, negligent in going upon the lowest step of the car and standing there with his back toward the platform and his head leaning outward, to vomit, while the train was running at the rate of twenty-five miles an hour, the jury finding that it was dangerous for him to do so. In the case last mentioned, the question as to contributory negligence arose under a special verdict, and it was said to be a well settled proposition in this State, that whenever, under the facts disclosed by a special verdict, the question is presented either as to the negligence of the defendant, or as to whether the plaintiff was without fault, and two inferences may be reasonably drawn as to either of said ultimate facts, one in favor and the other against, then the determination of such a fact is within the province of the jurors, and their finding will be accepted by the court as conclusive; but if the facts found are such that the court can adjudge, as a matter of law, that the injured party was or was not guilty of contributory negligence, then the finding of such ultimate fact, whatever it may be, will be disregarded by the court.

In the case at bar, regarding, as we must, the evi-

dence most favorable to the appellee, which it was within the province of the jury to accept as showing truly the facts of the injury, we are presented with the question whether the court or the jury should determine, upon those facts, the question as to contributory negligence.

We need not again recite those facts, or any of them. Regarding them all together, and considering them in connection with the authorities, we are of the opinion that the question as to whether the evidence most favorable to the appellee did or did not show her to be free from contributory fault was one for the jury to determine under proper instructions from the court.

The question as to contributory negligence determined by the jury, under the evidence produced by the appellee, was not one of voluntarily alighting from a moving train, but one of going upon the lower step of a slowly moving car, and, the car still slowly moving, standing there and waiting with the intention of alighting when the train should cease to move. The difference between such cases is not an insignificant one.

It is earnestly argued by the appellant that the trial proceeded upon a different theory from that set out in the complaint, which alleged that the train stopped, while the appellee's evidence upheld the theory that the train did not stop.

It devolves upon us to inquire whether this difference between the evidence and the statement in the complaint constitutes a failure of proof.

In *Waldhier* v. *Hannibal, etc., R. R. Co.,* 71 Mo. 514, the action being for negligence in having and using insufficient machinery and in running and managing its railroad and cars, it was held that the plaintiff could not recover upon proof that the injury was occasioned by a broken frog.

In *Price* v. *St. Louis, etc., R. W. Co.*, 72 Mo. 414, where the fault of the defendant was in not stopping the motion of the train a reasonable time to admit of the plaintiff's leaving the cars, whereby he, in leaving the train, was thrown with violence upon the platform of the depot, it was held that the plaintiff could not recover upon proof of the company's failure to keep the platform lighted.

Where the alleged negligence of the defendant was its failure to blow a whistle, it was held that evidence that the whistle was defective was not admissible. *Gulf, etc., R. W. Co.* v. *Scott* (Tex. Civ. App.), 27 S. W. 827.

In *Birmingham, etc., R. W. Co.* v. *Clay*, 108 Ala. 233, 19 South. 309, the third count of the complaint alleged that while a train had stopped for receiving and putting off passengers, the plaintiff's intestate and other passengers seeking to board said train, got upon the platform of one of the cars; that while he was on said platform, and before he had time and opportunity to get inside said car, it was quickly put in motion, and he was thereby thrown from his balance and caused to fall off said platform and under the wheels of the car he was seeking to enter, and he was thereby run over and killed; that his death was caused by the negligence of the defendant in not allowing the train to remain stationary long enough for him to get safely on the same, and in starting the train too suddenly, so as to throw him off said platform, and in failing to discover his peril, while on the platform, from said car being put in motion; in putting said train in motion while he was in a place of danger which might have been discovered and averted by proper care and watchfulness on the defendant's part; and in failing to keep a proper lookout to see that he had reached a place of safety on the train before it was put in motion.

It was said by the court: "There was no proof that intestate was ever on the platform of the car, and was thrown therefrom, but all the proof shows he had, attempting to board the train, ascended no further than the first or lowest step of the car, and was thrown from it. There was a variance, therefore, in the allegations of the third count, and the proof."

In *Cleveland, etc., R. W. Co.* v. *Wynant*, 100 Ind. 160, the complaint charged that the plaintiff's team of horses became frightened at an empty box car, negligently and unlawfully suffered by the defendant to remain upon the public highway, and ran away, etc. There was no evidence that the horses became frightened at the car, but there was evidence that they became frightened at a noise in a car that was on the railroad out in the public highway. It was held that there was a failure of proof.

In *Cincinnati, etc., R. R. Co.* v. *McClain, supra*, it was alleged in the complaint that the passenger was informed by the conductor that the train would stop at the crossing of the Belt Railroad, and that he could get off without danger. It appeared by the answers of the jury to interrogatories that the accident did not happen at the crossing, at the point where the train usually stopped, but happened at a point about 1600 feet east of the crossing; that the train did come almost to a stop at the usual stopping place, 250 feet east of the crossing. It was said by the court: "Whether it could be said that the switches, 1600 or 1800 feet east of the Belt, were 'at the crossing of the Belt Railroad,' in such a sense as to make the complaint good for an injury caused at the switches, but which was alleged to have been caused at the crossing where the train usually stopped, at a point 250 feet from the Belt road, may admit of grave doubt. * * *

No rule is better established than that a plaintiff must recover according to the allegations of his complaint, or not at all. He cannot recover on evidence which makes a case materially different from the case made by his pleadings."

Neither in the complaint, in the case at bar, nor in the evidence produced by the appellee, was there any matter relating to a defect in the locomotive or train or track or landing place. There was no difference between the complaint and the evidence as to time, place, surroundings, or persons. The complaint and the evidence both showed the cause of the injury to be the failure of the appellant to give the appellee an opportunity to alight in safety and the sudden starting up of the train with a jerk while she was upon the lower step of the car, her conduct in being there not being negligent, as a matter of law. Although the circumstances of her taking that position and standing there were described differently in the complaint and the evidence, yet the complaint alleged and the jury found that she was without fault in being there. Whether or not she was negligent in being there when the train started with a sudden jerk, was the important question relating to her conduct, and a slight difference in the two descriptions of the circumstances of her assuming the position could hardly be material.

The proximate cause of the appellee's injury was not her going down upon the lower step, or her standing there, while the train was moving slowly, nor was it the slow motion of the train while she went down the steps, or while she stood upon the lower step; but the wrongful and sudden jerk, which threw her off her balance and caused her to fall, was the proximate cause. But for this she would not have received the injury, to which, as the complaint showed and the jury

found, no fault of her's contributed proximately. The complaint and the evidence most favorable to the appellee both showed as the proximate cause, the starting with a sudden jerk.

The appellant does not appear to have been misled as to its defense. If the evidence produced by the appellant had been accepted and relied upon by the jury as showing the true state of the case, it would have established as complete a defense to the cause of action shown by the appellee's evidence as to that shown by the complaint.

While, as we have heretofore suggested, the conduct of the appellee in that she was not in the very act of alighting voluntarily, but was standing on the step waiting for the train to cease to move, until, being thrown from her balance, she jumped to save herself, might be considered by the jury as affecting the question as to the prudence of her actions, yet the difference between her conduct described in the complaint and that shown by her most favorable evidence would not be such as to make the duty of the appellant toward her essentially different in the one case from what it would be in the other case; and the conduct of the appellant affecting the appellee, as shown by the evidence most favorable to her, was not essentially different from that stated in the complaint. Certainly such variances are not to be commended or encouraged, but, after some hesitation, we find ourselves unable to regard the evidence most favorable to the appellee as showing a case so essentially different from that stated in the complaint as to constitute a failure to prove the complaint in its general scope and meaning. Counsel have discussed other matters pertaining to the trial. The questions thus presented are of such a character that no useful purpose would be

subserved by adding a discussion of them to what we have said.

We find no available error in the record.

Judgment affirmed.

HENLEY and WILEY, JJ., dissent.