MEMPHIS STREET RAILWAY COMPANY *v.* EMMA BERRY.

(*Jackson.* April Term, 1907.)

1. **VARIANCE.** None between allegations and proof in action against street railway for wrongful collision causing death, when.

There is no variance between the allegations and the proof, where the declaration in an action against a street railway company for causing the death of plaintiff's husband alleged that while the decedent, with due care and diligence, was driving a heavily loaded wagon along its track, defendant carelessly, negligently, and recklessly ran one of its cars with great force and violence upon and against the wagon in which decedent was driving, throwing him from the seat, painfully and permanently injuring, wounding, and disabling him, and where the evidence was that the decedent was thrown from the wagon and injured during the flight of the horse, caused by his becoming frightened by the impact of the car produced by the negligence of the servants of the defendant; for the gravamen of the declaration is that decedent was thrown to the ground by the wrongful act of the defendant in running its car negligently against decedent's wagon. (*Post, pp.* 583-596.)

Cases cited and approved: Corn v. Brazelton, 2 Swan, 273; and numerous other cases from other States, cited in the opinion, on pages 593-595.

Cases cited and distinguished: Coal Co. v. Daniel, 100 Tenn., 65; and numerous other cases from other States, cited in the opinion, on pages 586-592.

2. **EVIDENCE.** Mortality tables showing expectancy of life, when the evidence of disease is conflicting, when.

In an action for wrongful death, the admission of mortality tables as evidence of the decedent's expectancy of life is not erroneous, though there was evidence that decedent was in a very

Railroad v. Berry.

advanced stage of dropsy, when there was also evidence to the contrary, and where the court fully instructed the jury on the application of the tables, on the theory of the defendant as to the state of health of the decedent. (*Post, pp.* 596, 597.)

3. **VERDICTS.** For wrongful death is excessive for shortness of expectancy of life, etc., when; remittitur cures excessiveness, when.

A verdict for four thousand dollars is excessive, and there must be a remittitur of one-half of it, or a new trial will be granted, in an action against a street railway company for a wrongful death, where the evidence showed that the decedent was afflicted with dropsy, that his life could have lasted but a very few years, with earning power constantly decreasing, and probably soon ceasing altogether, with the progress of the disease; that he never recovered his senses after the accident, and hence did not suffer consciously; and that there was an entire absence of wantonness on the part of the defendant or its servants. (*Post, pp.* 598-600.)

FROM SHELBY.

Appeal from the Circuit Court of Shelby County.—J. P. YOUNG, Judge.

CARUTHERS EWING, for Street Railway.

BELL, TERRY, ANDERSON & BELL, for Berry.

Railroad v. Berry.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the circuit court of Shelby county by the defendant in error, as the widow of Harley Berry, to recover damages for his death, alleged to have been caused by the negligent act of the plaintiff in error. There was a verdict in the court below for $4,000, on which judgment was entered. From this judgment the plaintiff in error, after its motion for a new trial had been made and overruled, appealed to this court, and has here assigned errors.

Before stating the points made in the assignments, it is proper that we should give a brief outline of the facts. On the 5th of March, 1904, Harley Berry was driving along McLemore avenue, in the suburbs of Memphis, in company with one Warren. The wagon was a trucker's wagon, and had in it a barrel of apples, some lead, some bananas, and a variety of other things. It had, in fact, quite a heavy load.

As Berry was driving along, going eastward, he was met by one of the plaintiff in error's cars going westward. In order to avoid this car, he drove upon the south track, and was pursuing his route homeward when his companion called his attention to the fact that there was another car coming; that it was behind him, and about one hundred yards distant. The motorman sounded the gong, and the plaintiff in error tried to get off of the track, but could not do so, because the rails at this point were high above the surface of the street, the result

of which was that the wheels slid along the side of the rail, and the horse could not pull the wagon off. While Berry was in this situation, the car ran too near for safety, and the wagon was struck. The motorman checked the car, but not sufficiently to prevent the accident. He did not reverse his lever until within about three feet of the wagon, and it was then too late.

There is evidence to the effect that, when the car struck the wagon, it did not turn the latter over at first, but shoved it along some distance, and finally tilted the wagon over and threw the two men out. There is also evidence to the effect that the fender of the car merely ran under the hind wheels of the wagon, and thus forced the wagon upon the horse and scared him, and he ran away, and as he ran the two men were thrown from the wagon and thus injured. As a result of the accident, Harley Berry received an injury to his head, his skull being fractured, his collar bone was broken, and his back was injured, and he died within a few hours afterward.

There is evidence to the effect that Mr. Berry was, at the time, in a very low state of health—in fact, that he was in an advanced stage of dropsy; that he had formerly been engaged as an employee in a heading factory, but was unable to perform his duties there on account of his physical condition, and undertook the lighter work of running a huckster wagon. There is other evidence to the effect that, while Mr. Berry was not a

strong man, yet he was able to work every day, and was earning sixty or seventy dollars a month.

Numerous errors are assigned, but in the brief of the learned counsel for the plaintiff in error only two are insisted upon. One of these is based on the evidence that the wagon was not careened by the direct impact of the street car, but by the running away of the horse, in consequence of the fright of the latter from the stroke of the car.

The point of law raised upon this phase of the evidence is based, first, on the assignment that there is no evidence to sustain the verdict; next, upon the charge of the court below, and the refusal of that court to charge certain requests.

We do not think the question can be made under the assignment first referred to, because there are two theories of the accident disclosed by the evidence. One of these, as already stated, is that the wagon was overthrown by the direct impact of the car, and there is other evidence to the effect that this impact was produced by the negligence of the servants of the street railway company. This evidence would sustain the verdict, aside from the testimony in respect of the frightening of the horse and the throwing out of the occupants of the wagon while he was running away. However, the circuit judge charged the jury in effect that, if the impact of the car was caused by the negligence of the plaintiff in error, a recovery could be had, whether the wagon was overturned by direct impact of the car, or whether by

that impact the horse was frightened and ran away, and during his flight Mr. Berry was thrown from the wagon and injured in the manner indicated.

The plaintiff in error insisted that this latter phase of the matter was not embraced within the averments of the declaration, and that this charge was improperly given, and that certain requests, asking that the jury be directed to the reverse of the charge, were improperly refused.

The declaration contains the following averment: "On or about the 5th day of March, 1904, Harley Berry, then plaintiff's husband, was driving a heavily loaded wagon upon and along McLemore avenue, and at and near the intersection of Raleigh avenue, and, while plaintiff's intestate was in the exercise of due care and diligence, the defendant carelessly, negligently, and recklessly ran one of its cars with great force and violence upon and against the wagon in which the plaintiff's intestate was driving, throwing him from the seat, painfully and permanently injuring, wounding, and disabling him."

There are other averments in the declaration, but the foregoing is sufficient to present the point in question.

The plaintiff in error insisted that the evidence last above referred to was at variance with the case charged in the declaration, and it is insisted that the instruction was therefore erroneous. In support of the assignment we are referred to *E. T. Coal Co.* v. *Daniel,* 100 Tenn., 65, 42 S. W., 1062; *Albin* v. *Seattle Electric Co.,* 82 Pac., 145, 40 Wash., 51; *Scheu* v. *Union Ry. Co.* (Sup.), 98 N.

Railroad v. Berry.

Y. Supp., 278; *Dolson* v. *Dunham et al.*, 104 N. W., 964, 96 Minn., 227; *Cincinnati, L. & A. Elec. St. Ry. Co.* v. *Stahle* (Ind. App.), 76 N. E., 551; *Chicago Union Traction Co.* v. *Grommes*, 110 Ill. App., 113.

In *E. T. Coal Co.* v. *Daniel*, supra, it is held that, where definite acts of negligence are alleged in the declaration as grounds of liability against the defendant, the proof must be confined to those acts. In this case, the grounds of liability, as specifically alleged in the declaration, were that the injury was caused by the breaking loose of the couplings by which the car on which the accident happened was attached to the wire cable. The amended declaration alleged that the injury was caused by defective and dangerously constructed machinery, tracks, etc., which, at the time of the accident, were seriously out of order and dangerously constructed.

Evidence was introduced tending to show that the injury might have occurred in other ways. For example, that it was caused by coal left in the "latches;" another, that it was caused by the coupling bouncing out of the links; another, that the tires of the car were worn; another, that the car was out of gauge; and another witness said that the pressure of the rope might have thrown the car off. The court held that these matters could not be looked to, but the plaintiff, having specified the grounds of liability in its declaration, would be confined to proofs of the acts there alleged.

In *Albin's Case* the complaint alleged that the plain-

tiff was a passenger on defendant's street car, and after it had come to a stop, and when she was about to alight, the servants in charge negligently and violently started the car without warning, throwing plaintiff off. It was held that, although there was a general allegation of negligence following this statement, it did not authorize evidence of other negligence than the starting of the car until it had been brought to a stop—for example, did not authorize proof of the defective condition of the car.

In disposing of this point the court said: "If the facts constituting negligence are specifically alleged, the pleader, in presenting his evidence, should be limited to proof of such facts; otherwise, there would be a variance, to the prejudice of the opposite party. This complaint contains most specific allegations of all the facts upon which respondents base their claim that appellant has been guilty of negligence, and, as we consider the pleading, it fails to make any general allegation of negligence. Mr. Austin Abbott, in the second edition of his work of Trial Briefs, at page 1500, in section 330, under the title of 'Negligence,' says: 'A general allegation of negligence lets in evidence of the circumstances constituting it.' This is undoubtedly the correct rule, and has been recognized by this court; but at page 1505, in section 333, Mr. Abbott also says: 'But when the general allegation is followed by a specification of the acts of negligence complained of, or the negligence is specifically set forth without general allegation, the evidence will be confined to the issues so limited, and proof of other facts

will constitute a variance.' In *Toledo, Wabash & W. Ry. Co.* v. *Foss,* 88 Ill., 552, the court says: 'The allegation and proof must correspond. The plaintiff could not aver negligence in the one particular, and on the trial prove that defendant was negligent in another regard. One object of a declaration is to state facts relied upon for a recovery so plainly that the defendant may be prepared to meet them. This object in pleading would be entirely defeated if plaintiff had the right to aver in his declaration one ground of action and on the trial prove another and different one.' In *Carter* v. *Kansas City, St. J. & C. B. Ry. Co.,* 65 Iowa, 288, 21 N. W., 607, the court says: 'Having averred negligence and in what the negligence consisted, we think the plaintiff should not have been allowed to show other negligence. The defendant, it seems to us, was justified in assuming that the issue was not broader than that which the plaintiff, by his express averments, had seen fit to tender. If we should hold that the plaintiff might aver one kind of negligence and prove another, we should not only hold, in effect, that the averment had no significance, but that it was allowable for the plaintiff to so frame his petition that it should be well calculated to deceive and mislead the defendant.' See, also, *Redford* v. *Spokane St. Ry. Co.,* 9 Wash., 55, 36 Pac., 1085; *Toledo, etc., Ry. Co.* v. *Beggs,* 85 Ill., 80, 20 Am. Rep., 613; *Waldhier* v. *Hannibal, etc., Ry. Co.,* 71 Mo., 514; *Santa Fe, etc., Ry. Co.* v. *Hurley,* 36 Pac., 216, 4 Ariz., 258."

In *Schew's Case* the complaint alleged that while plain-

tiff was riding as a passenger, and seated, the defendant propelled its car at such a dangerous rate of speed around a curve as to throw her from her seat to the ground. The court held that this allegation would not support proof that the injuries were received while the plaintiff was attempting to alight. The court said: "There is a wide difference between the negligence of running a car at such a reckless speed as to hurl passengers from their seats, and that of not permitting a passenger a reasonable opportunity to alight after signaling, which has been complied with. The one in no sense involves the other."

In *Dolson* v. *Dunham* the plaintiff alleged that he was injured on account of being placed in a position where it was his duty to prevent a belt from flying off of a pulley, and he placed his foot against it to hold it on, and was thrown back against a running saw, whereby his arm was cut off. A judgment for the plaintiff was reversed, because the trial court repeatedly submitted to the consideration of the jury the negligence of the defendant to warn the plaintiff or to advise him what position to take. "There was," said the court, "no issue on this subject, either in the pleadings or in the evidence; and, although there was testimony that the defendant cautioned the plaintiff to be careful, that issue was not litigated by consent. These instructions, calculated, as they were, to materially influence the jury, were therefore gratuitous. The defendant is for that reason entitled to a new trial."

Railroad v. Berry.

In *Cincinnati, L. & A. Elec. St. Ry. Co.* v. *Stahle,* the negligence averred was the disregard of an ordinance of the city and an excessive rate of speed. It was charged that the car was running at a high and dangerous rate of speed without signal around a curve, whereby the plaintiff was thus injured. It was said: "The court refused to submit certain instructions to the jury, requiring it to state in detail if the motorman operating the car failed to do anything which he could have done under the circumstances to stop before the collision occurred. These instructions were not directed to any issue, there being no charge of negligence in this respect indicated. Instructions must be directed to the issues in the cause."

In *Chicago Union Traction Co.* v. *Grommes,* the negligence alleged in the declaration was that the defendant negligently caused the car to be suddenly and violently started while the plaintiff was attempting to alight. It was held that an instruction authorizing recovery if the jury believed that the accident and injuries to plaintiff were caused by the carelessness and negligence of the company, and if the plaintiff used due care and caution when he alighted from the car, or attempted to leave the car, after it stopped, and that the plaintiff was injured by the car from which he was alighting, was held to be erroneous, as not confining the jury to the consideration of the negligence alleged in the declaration. The court said: "The instruction is erroneous in not confining the jury to consideration of the negligence alleged in

the declaration—that, while appellee was attempting to alight from the train, appellant negligently caused it to be suddenly and violently started." The instruction given authorized the jury to consider other acts of negligence.

We have thus gone through the cases cited, and stated the particular grounds on which the court's action was based, in order that they may be distinguished from the present controversy. It is observed that, in the cases cited, acts of negligence distinct and apart from those charged were sought to be proven, or were proven, and were sanctioned by the charge of the trial judge.

The present case is different from those cited, in the fact that no act different from the one charged in the declaration was proven, but the evidence complained of merely set forth the consequences—a natural sequence of the negligent act. According to this evidence, the wagon was not overturned at once upon the impact of the car, but by that impact the horse was frightened and ran away, and while thus pursuing the impulse given him by the negligent act of the defendant he careened the wagon and injured the intestate of the defendant in error. This does not present a case of variance. In 22 Encyclopedia of Pleading & Practice it is said: "Where acts are alleged according to their legal effect, proof of any state of facts that will constitute the legal effect alleged is admissible, and a substantial accordance between the conclusion drawn from the facts proved and the allegations is sufficient, whether the action

arises out of a contract or out of a tort." Id., 560-562.

Some of the illustrations given in the notes are the following: "Where an individual member of a firm is charged with a tort, and the proof shows it to have been committed by the firm, its agents, or servants, there is no variance." *Stockton* v. *Frey,* 4 Gill (Md.), 406, 45 Am. Dec., 138. "An allegation that fraudulent representations were made to the plaintiffs, and proof that the representations were in fact made to the plaintiffs' agents, are not materially variant." *Wolf* v. *Lachman* (Tex. Civ. App. 1892), 20 S. W., 867. "In *Brucker* v. *Fromont,* 6 T. R., 659, the plaintiff declared against the defendant for driving a cart and horse along the highway so negligently that the cart was driven against the plaintiff's horse, whereby the plaintiff's horse was injured. The proof showed that the defendant's servant was driving the cart at the time when the accident happened, and the defendant himself was not present. The variance was held to be immaterial." In our own case of *Corn & Wife* v. *Brazelton,* it was held that in an action of replevin, where the declaration averred that both defendants took and detained the property, it was supported by proof that the wife took and detained it. "For," said the court, "the husband is liable for the wrongful acts of his wife. Where a husband brought suit in his own name upon a contract, proof of a contract under which he and his wife were to work was held not to be materially variant." 2 Swan, 273.

118 Tenn—38

On page 556 of the volume above referred to it is said: "Where a tort is averred, and the substance of the allegation is proved, a variance is not material, if the opposite party has not been misled."

In the notes the following illustrations are given: "Where an injury is not proven precisely as laid, but the character of the injury proved is the same as that alleged, and the allegation is sufficient to inform the defendant thereof, the variance is not fatal or material." *Joliet* v. *Johnson,* 177 Ill., 178, 52 N. E., 498. "Proof that the plaintiff was standing on the step of a train waiting for the train to stop, and was then thrown off by a jerk, is not materially variant from an allegation that the train stopped, but that the defendants started it with a violent jerk, without giving a reasonable time to alight." *Cincinnati, etc., R. Co.* v. *Revalee,* 17 Ind. App., 657, 46 N. E., 352. "Where the declaration averred that a horse backed off an embankment at a point about twelve feet east of the east end of a bridge; whereas, the proofs showed that he backed off at a point about eight feet east of the approach to the bridge, the variance was held to be immaterial." *Ross* v. *Ionia Tp.,* 104 Mich., 320, 62 N. W., 401. "Where the plaintiff alleged that his foot caught in an angle called a 'frog,' formed by the junction of a switch rail with another rail, proof that his foot caught at an angle which was not a frog was held to support the allegation." *San Antonio, etc., R. Co.* v. *Gillum* (Tex. Civ. App.), 30 S. W., 697.

In *Texas & Pacific Railway Co.* v. *Williams*, 67 Fed., 440, 10 C. C. A., 465, it appeared that the declaration alleged that, while plaintiff was riding on one of the regular passenger trains of the defendant, he was assaulted and beaten and kicked from the train by the company's conductor in charge. The testimony showed that, after a violent altercation between the conductor and the plaintiff, the conductor drew a knife from his pocket and threatened to cut the plaintiff's throat, and thereupon the plaintiff rushed through the door, out upon the platform, and jumped from the moving train. Speaking to this matter the court said: "In instructing the jury that, if they found that the conductor alarmed the plaintiff to such an extent that he jumped off the car, they should find for the plaintiff, although the allegations of the petition were that he was knocked and kicked from the train, we consider that the judge charged upon the evidence before him, and that the variance between *allegata* and *probata* was immaterial. It was not such as could mislead or surprise the adverse party. *McClelland* v. *Smith*, 3 Tex., 210; *May* v. *Pollard*, 28 Tex., 677; *Wiesbusch* v. *Taylor*, 64 *Tex.*, 53. Forcing the plaintiff off the train in a wrongful manner was the gravamen of the complaint, and whether it was done with the hand, the foot, or threats of bodily injury, the effect was the same."

So, in the present case, the gravamen of the declaration is that intestate of the defendant in error was thrown to the ground by the wrongful act of the plaintiff

in error in running its car negligently against the wagon of the intestate. It is immaterial whether the negligent act resulted in the instant overthrow of the wagon, or whether the result did not take effect until a few seconds thereafter, through the action of the horse, which was caused to run away by the stroke given to the wagon. In either event, the negligent stroke of the car upon the wagon was the proximate cause of the injury; no intervening, independent agency being shown.

We are of opinion, therefore, that the first contention of the plaintiff in error must be disallowed.

The second contention is that the verdict of the jury is excessive, evincing passion, prejudice, or caprice.

In discussing this part of the case, counsel for plaintiff in error very earnestly complained of the action of the circuit judge in admitting as evidence the mortality tables to the jury. Counsel concedes, of course, that it is proper to admit these tables ordinarily, but insists that the physical condition of the decedent was so bad that these tables could throw no light upon the controversy, since he could have no expectancy within the purview of the rule of law which justifies the introduction of such tables. We need only say upon this subject that there was evidence to the effect that the deceased was in a very advanced state of dropsy, and there was evidence to the contrary. Of course, in this state of the case, no such question could arise as that suggested by the counsel. However, the circuit judge fully instructed the jury on the application of the tables, on the theory of the plain-

Railroad v. Berry.

tiff in error as to the state of the health of the decedent.

Upon this subject the circuit judge said to the jury: "In considering the mortality tables, showing the life expectancy of the deceased, you are not entitled to accept the said mortality tables as establishing the life expectancy of the deceased. You are not entitled to take said mortality tables as establishing the deceased's life expectancy. The duration of human life is at most problematical, and if, from the evidence, you find that the deceased was a man in the last stages of dropsy, if he was in a debilitated and low state of health, if he was not a normally healthy man, then the peculiar condition of the health of the deceased would prevent the life expectancy, as shown by the mortality tables, from having any application whatever. Therefore, if you find that the deceased was in a dropsical condition, and was in a low and debilitated physical condition, it is your duty to, from the evidence, estimate with as much certainty as possible what, in your opinion, would have been his reasonable life expectancy, and you are to base the assessment of damages, should you find in favor of the plaintiff, on the earning capacity and habits of the deceased, with particular reference to his life expectancy, taking into consideration his condition of health, and to the exclusion of any life expectancy, as shown by the mortality tables."

Without passing upon the correctness of these instructions, we think without doubt counsel for plaintiff in

error can have no reasonable ground of objection to them.

Now, passing to the direct consideration of the question whether the verdict is excessive.

We have very carefully read and re-read the evidence bearing upon this subject, and have carefully weighed it. From this examination we cannot feel otherwise than fully satisfied that the deceased was in a very low state of health.

Mr. McCauley, a wholly disinterested witness, says that the deceased told him that he was not able to do a day's work, and had quit his job two or three months before the accident. The witness also says that "he was swollen up pretty badly sometimes." Another witness says that his feet were swollen. Dr. Haynes, who saw him before he was injured, says that he gave the appearance of a man suffering from dropsy. Dr. McGhee, who examined him after he was injured, and who is likewise a disinterested witness says: "His abdomen was distended, very much like a man with a large quantity of fluid; that was caused by fluid in the abdominal cavity commonly spoken of as dropsy. The legs were swollen due to the same condition—dropsy." He made further examination, which convinced him that the decedent was afflicted with dropsy before he was injured, and he says that the reasonable life expectancy for him would have been six months.

The defendant in error in her testimony admits that her husband was not strong, but says he was not af-

flicted with dropsy, and that he was able to do his work, and was earning sixty or seventy dollars a month.

Another witness testifies that he was not strong, but he did not have dropsy. However, when we consider the medical evidence and the unmistakable sign given by the swelling of the body and limbs, as interpreted by the medical men, we cannot have any doubt that he was really suffering from dropsy, which the physicians say is not in itself a disease, but is the effect of disease, which may result from heart disease, Bright's disease, or from what is called a "hob-nail liver"—the liver of a person who drinks too much—or it may result from a long spell of fever.

In view of this evidence, and of the special circumstances attending the accident, showing an absence of wantonness on the part of the company's servants, and at most a miscalculation as to the amount of reduction required in the speed of the car which the motorman was slowing down at the time, and after making due allowance for the nature of the injuries received, and after considering that the deceased never recovered his senses, and hence did not consciously suffer, and that, whatever his earning power may have been, his life, in all human probability, could have lasted, at most, but a very few years, with earning power constantly decreasing, and probably soon ceasing altogether, with the progress of the disease, we think that half of the amount allowed by the jury would have been ample. The defendant in error is therefore given the option of remitting one-

Railroad v. Berry.

half of the verdict. If this option is exercised, the judg-ment will be affirmed for the residue; otherwise, the judg-ment will be reversed, and the cause remanded for a new trial.