THE NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY
v. A. M. MANGRUM, Administrator.

Western Section.    October 28, 1932.

Petition for Certiorari denied by Supreme Court, January 21, 1933.

S. L. Peeler, of Camden, and Walton Whitwell, of Nashville, for plaintiff in error.

C. N. Frazier, of Camden, and J. C. R. McCall, of Huntingdon, for defendant in error.

HEISKELL, J. This suit was instituted to recover damages on account of the death of J. T. Mangrum, Jr., a child about three and

one-half years of age, claimed to have been killed by one of the Railway's trains on November 28, 1931, while playing on an overhead bridge just east of Camden, Tennessee.

At the conclusion of all of the evidence in the case the Railway moved for a directed verdict in its favor on each count of the declaration. The motion was overruled and the Railway seasonably excepted.

The jury returned a verdict against the railway in the sum of $10,000.

The Railway seasonably filed its motion for a new trial, which motion, and each ground thereof, was overruled except that the court suggested a remittitur of $4,000, which was accepted under protest. The Railway Company has appealed.

The declaration is predicated upon an alleged violation of subsection 4 of Section 1574, Shannon's Code, and the case was submitted to the jury solely upon statutory grounds. It is conceded, therefore, that plaintiff can recover only on the theory that the child was struck by the front of the engine, but it is contended that the proof warranted the jury in so finding and that the verdict is conclusive as to this fact.

It is agreed that the train was going west at a speed of 20 to 30 miles an hour; that the track was straight for at least three-quarters of a mile to the east of the bridge, and that the child was found on the road, under the south side of the bridge.

The engineer and fireman testified that they were constantly on the lookout ahead as the train approached the overhead bridge and did not see any child upon or near the bridge. There is no doubt that the child was playing on the overhead bridge, just before the train approached. It is the theory of the plaintiff that he was struck by the front of the engine, knocked off the bridge and killed. It is the theory of the defendant that the child fell off the bridge without being struck by the engine, or that in any event, the most that can be made of plaintiff's proof is that the child was struck by the side of the engine.

It may be conceded that there is enough evidence to sustain a verdict in favor of either theory, and with this we will take up the assignments of error.

The first assignment is that the court erred in overruling defendant's motion for a directed verdict. This motion contains an elaborate statement of defendant's theory of the proof. We think it was properly overruled because there is evidence to support the theory of plaintiff also.

The second assignment is that it was error to overrule motion for new trial on the ground that there is no evidence to support the

verdict. For the reason already stated this assignment is not well taken.

The third assignment, so far as necessary to state, is as follows:

"The court erred in overruling and disallowing defendant's motion for a mistrial on account of remarks of O. L. Smith, attorney for the plaintiff, in his speech to the jury, in the argument of the cause. In the course of the argument of attorney Smith, the following occurred:

"Attorney Smith said to the jury the following:

" 'See the condition of all the surrounding circumstances, the evidence shows beyond a single doubt that that child stood there, innocent of the harm approaching it, and see that train as it bears down upon it and knocks it off down on the highway, and going on up to the depot, getting off the train, the whole crew of men on that train walked around that train, walked all around it because they heard that a little child had been killed and it might have been killed by the train, but not a one of them went to see if the child had been picked up, or if it had been carried to the doctor, or if anything had been done for it. Oh, that careless, cold-hearted deathless attitude to people of these great corporations, these great railway corporations, I tell you, my friends,' "—

"Mr. Whitwell: 'If the Court please, I want to except to the statement, 'cold-hearted deathless attitude of corporations to people' as there is nothing in this evidence to warrant such a statement, and it is highly prejudicial, improper and highly inflammatory. We are entitled to a fair trial and such a statement denied us due process of law under the Fourteenth Amendment to the Constitution of the United States. I move Your Honor for a mistrial in this cause.'

"Motion was overruled and defendant excepted.

"The Court: 'Gentlemen of the jury, you accept this argument now so far as it appears to you to be reasonable. This lawsuit must be tried just the same as if it were between two individuals, it must be tried upon the law and the evidence, and the court withdraws from you this last statement made you by Mr. Smith. Mr. Smith, bear in mind that this case must be tried like any other case. I do hope no injury has been done.' "

And the fourth assignment is:

"The court erred in overruling and disallowing defendant's motion for a mistrial when Mr. J. C. R. McCall, attorney for the plaintiff, read in the presence of the jury and to the jury from the 1932 Code of Tennessee, section 10818, as follows:

" 'If any engine driver, or other person connected with the running of a locomotive or a train, upon any railroad, shall omit

to observe the precautions prescribed for the prevention of accidents, whereby an accident shall occur, and any person shall be killed, he shall be guilty of a felony.'

"Defendant's exception and motion for a mistrial on account of the reading of said statute in the presence of and to the jury was seasonably made, and is as follows:

"Mr. Whitwell: We except to this statement, this section of the statute which was only effective as of January 1st this year and the proof shows that this accident happened back in 1932 (1931), and I move for a mistrial on the ground of reading that statute in the presence of the jury.

"After said motion for a mistrial was made, the following occurred:

"The Court: Well—

"Mr. McCall: If the court please, the Code shows this was a statute passed in 1855. He can't get around that.

"Mr. Whitwell: It is very improper to read it before the jury.

"The Court: Well, I will have to overrule the motion.

"To which action of the court the defendant excepted.

"Movant insists that the court erred in overruling and disallowing defendant's motion for a mistrial on account of the reading of said statute in the presence and to the jury, for the following reasons:

"1. Said statute was and is a penal statute, providing certain punishment if engine drivers or other persons connected with the running of a locomotive or train on any railroad, shall omit to observe the precautions prescribed for the prevention of accidents, whereby an accident shall occur and any person shall be killed, and providing further that the offense shall be a felony.

"It was improper to read said penal statute in the presence of and to the jury, in the argument of this case, wherein the defendant was the Nashville, Chattanooga & St. Louis Railway, and not an engine driver or other person connected with the running of a locomotive or train, and the present action was and is a civil suit, not a criminal suit. The reading of said statute was for the purpose of inflaming and prejudicing the minds of the jury against the defendant and its witnesses, the engine driver, the fireman, the brakeman and conductor, who testified as witnesses for the defendant in the cause.

"2. The reading of said statute in the presence of and to the jury by Mr. McCall, attorney for the plaintiff, was especially harmful and prejudicial to the defendant, when considered in connection with other remarks made immediately before and immediately after said statute was read. The remarks were as follows:

" 'Now, Mr. Peeler, and I think Mr. Whitwell both undertook to show that these railroad men—oh yes, they were very much disinterested just what they come up 'here and swear to you as disinterested people, you may take what they said like anybody else. Now, let's see what the law' says about that. The laws says: (reading) "If any engine driver, or other person connected with the running of a locomotive or train, on any railroad, shall omit to observe the precautions prescribed for the prevention of accidents, whereby an accident shall occur and any person shall be killed, he shall be guilty of a felony." That is what it says. So, if this engineer here, and this fireman, and these other fellows on that engine, if they say to you that they were not looking out while this engine was going along there, they would be guilty of a felony and ought to be sent to the penitentiary.'

"Attorney McCall read said statute to the jury for the purpose of prejudicing and inflaming the minds of the jury against the members of the train crew on the train involved, who were witnesses for the defendant, and movant avers that the reading of said statute had the result which attorney McCall desired.

"It was improper to read said statute in the presence of and to the jury in the argument of the case, by Mr. McCall, attorney for the plaintiff, in that it did not appear from the evidence that any member of the crew of the train involved had been indicted, or any attempted made to indict said members of the train crew, of either of them, for a felony in connection with the death of the deceased, J. T. Mangrum; there was nothing to indicate or justify the reading of the statute or the argument that said witnesses were not speaking the truth because of such a statute, or because of any fear of prosecution and conviction under said statute."

Great liberality is allowed attorneys in making deductions from facts, or arguments based on fact, and the court is reluctant to undertake to control the discretions of trial courts in regard thereto. Crews v. Gould, 6 Higgins, 620; Mfg. Co. v. Woodall, 115 Tenn., 605, 90 S. W., 623.

At the same time what the appellate courts consider unwarranted argument of counsel to the jury, seeking a verdict by appealing to prejudice, passion or sentiment, is uniformly held to constitute reversible error. The question to be determined in the present case is, which rule applies to the arguments of counsel complained of.

In Pullman Company v. Pennock, 118 Tenn., 565, 102 S. W., 73, the court said:

"It is immaterial that the objection to the improper matter was sustained, and that counsel was reprimanded and fined. The purpose of counsel had been accomplished. The jury had been

inoculated with the poison of the foreign matter improperly injected in the case, and every lawyer of experience knows the impossibility of removing the impression that has been made. It cannot be done. No verdict should be allowed to stand where counsel deliberately and persistently inject into the record matter calculated to prejudice the jury against the opposite party and influence the jurors in their deliberations. Tampering with juries in or out of court in any form cannot be tolerated. It corrupts the very foundation of justice and renders a trial worse than a farce. The client is responsible for the action of his attorney, and cannot be allowed to reap a benefit improperly obtained by him. The conduct of counsel in this case could not have been intended for any other purpose than to cause the jury to render an excessive verdict, and it is evident, considering the size of that found, and the injuries sustained by the plaintiff, that his efforts were successful.''

The language of counsel condemned in that case was as follows:
''Gentlemen, it is for you to say how much damage you will assess against this defendant. The Pullman Company is a vast and wealthy corporation, which enjoys large and valuable privileges given it by the people of Missouri, Kentucky, Tennessee and other states. It enjoys these privileges and makes for itself a vast income. The public are absolutely at its mercy. There is a case almost identical with this, where a man was put out of a car, and the jury gave a verdict of $10,000, and the Supreme Court of the state, on appeal, sustained the verdict.''

The first part of this is much like that used by counsel in the present case. The reference to another verdict, of course, is different. There are cases, however, in which language used by counsel, no stronger than that objected to in the third assignment in the present case is held to justify a new trial.

In Whipple v. Michigan Central R. Co. (Mich., 1906), 106 N. W., 690, the case was reversed because of argument of counsel stressing the distinction between a corporation and an individual as to feeling and sympathy.

The language of counsel in that case was this: ''He (counsel for defendant), will be very sorry that this accident happened. He will be very sorry she was injured. The company will be very sorry and will put her off with sympathizing words only. This defendant here, when you speak of sympathizing, is not capable of feeling sympathy, it is not a living person. . . . A man has human feeling, a corporation has none.'' On exception, the Court said very much as the Court in the present case, that in regard to damages corporations stand the same as any other person. The appellate court granted a

new trial, saying that corporations are run by individuals who may have sympathy and feeling.

In Western Atlantic R. R. v. Cox (Ga.), 42 S. E., 75, counsel said: "The only way to reach a Railroad is to make it pay money. A railroad has no soul, no conscience and no God." A motion for mistrial was overruled and the case was reversed in a strong statement of the law, citing Willis v. McNeil, 57 Tex., 465, where the ground for reversal was that counsel referred to the wealth of defendant and argued that this should influence the verdict.

In Sparks v. Maeschal (Ky., 1927), 289 S. W., 308, the case was reversed on account of argument of counsel that he felt great responsibility "in presenting the case of this poor little boy against this rich and powerful corporation."

The language quoted is not the only language used by the attorney for plaintiff which is objectionable.

In the course of his remarks the attorney referred to the defendant as "That power trust, that giant railway company."

Again, the attorney referred to the array of witnesses and attorneys and people brought there to defeat a "little child's parents who are ignorant in so far as the great statutes of the law are concerned."

Again, the attorney pressed upon the jury that "little child's parents are arrayed against a great power trust."

Again, the attorney said:

"Here, my friends, is a picture of big business, big industry arrayed on one side, and on the other, a poor working farm man. Here, on one side sits learned counsel, paid perhaps by the year for their services, men whose jobs perhaps are at stake, and whose interests is at stake through carelessness and neglect, testifying as witnesses here before you, while on the other hand is an honest farm man, an honest, kind, good woman, the parents of this child, seeking only a slight retribution for the injuries that is unrepairable that has been done to them in this case."

There was no evidence to justify the attempt to influence the jury by appealing to its prejudice against the defendant corporation. Even if some of the language used was not specifically excepted to, this makes little difference, as the courts lay down the rule that it is the duty of counsel for plaintiff and of the trial court to see that such an appeal to the jury is not made and that defendant gets a fair trial. Watkins v. State, 140 Tenn., 1, 203 S. W., 344; New York Central v. Johnson, 279 U. S., 310; Turner v. State, 72 Tenn., 206; Pullman Co. v. Pennock, 118 Tenn., 565.

There are many other cases dealing with this question of the misconduct of attorneys in addressing juries. Other cases could be cited which have been reversed on account of language used in argument, no stronger than that complained of in the present case. The cases

cited herein are in accord with the current of authority, and show that the arguments objected to constitute reversible error.

Assignment four complains of the argument of other counsel for plaintiff in reading to the jury the statute making it a felony for any person connected with running a locomotive to fail to observe the statutory precautions. The argument, of course, was that the fireman and engineer were guilty of a felony if they did not observe the statutory precautions; therefore, they could not be expected to admit that they did not, and therefore their testimony that they kept a lookout ahead and saw no obstruction on the track or in striking distance, must be considered by the jury as that of witnesses having an interest to protect themselves and liable to be influenced by the fear of punishment.

Counsel for plaintiff did not retract anything in regard to this argument, but defended it in full and the court made no objection to it. Counsel for plaintiff in their brief say:

"The defendant, who is the appellant, had put its engineer and fireman and two brakemen on the witness stand to show that they had observed the precautions prescribed for the prevention of accidents in an effort to show that it was not liable in damages for killing this little boy, and Mr. McCall read section 10818 to show to the jury that these witnesses were very much interested as to what they should swear; that if these employees should admit that they had not observed the precautions prescribed for the prevention of accidents and this little boy was killed, they would be guilty of a felony. It is entirely proper in any case to show what interest any witness may have in the case, or to show anything that might influence the testimony of a witness. This proposition is so sound and elementary in the law of evidence that we do not deem it necessary to cite any authority to sustain it. The court did not commit any error in overruling the motion for mistrial or for a new trial based on said incident, and the fourth assignment should be overruled."

While we appreciate the fact that this may seem to work a hardship upon the defendant railroad company in making it more difficult to prove to the satisfaction of a jury that the statutory precautions were observed, yet we cannot say that counsel for plaintiff was not entitled to call to the attention of the jury the probable effect that the interest of the witnesses might have in influencing their testimony. This assignment is therefore overruled.

The fifth assignment complains of the charge authorizing the jury to allow damages for pain and suffering when the proof shows that the child was unconscious from the time of the injury until death. In Railroad v. Berry, 118 Tenn., 599, 102 S. W., 85, the court speaks

of the condition of unconsciousness as precluding the idea of conscious suffering. Other cases support this contention.

We think this feature of the charge in view of the state of the evidence before the jury should have been omitted or the jury should have been instructed not to consider the element of pain and suffering unless they found that evidence had been introduced to the effect that the boy was conscious for a period after the accident. This assignment is sustained.

As the case must be reversed and remanded for a new trial, it is not necessary to pass on the sixth assignment that the verdict is excessive. It is argued that there is evidence to support the verdict and, therefore, it is conclusive. There is conflicting evidence and if the jury was unduly influenced by the arguments of counsel, the jurors might have been prevented from giving weight to the evidence which was in favor of defendant's theory. Therefore, the ordinary rule in favor of a verdict supported by some evidence does not apply. So far as indicated the assignments of error are sustained. The judgment of the lower court will be reversed and the case remanded for a new trial. The appellee will pay the costs of appeal.

Owen and Senter, JJ., concur.